[Civ. No. 2662. Third Appellate District.—July 3, 1924.]

VERNON HUCKABY, Appellant, v. ELIZABETH NORTHAM et al., Respondents.

[1] APPEAL — ORDER GRANTING NEW TRIAL MADE IN 1918—ABSENCE OF SPECIFICATION OF GROUNDS OF—AMENDMENT OF 1919 TO SECTION 657, CODE OF CIVIL PROCEDURE—INAPPLICABILITY OF TO ORDER. The amendment of section 657 of the Code of Civil Procedure in 1919 (Stats. 1919, p. 141), providing that unless the order granting a new trial shall specify that it is made upon the ground of insufficiency of the evidence to sustain the verdict, it will be presumed on appeal that the order was not based upon that ground can have no application to an appeal from an order granting a new trial made in 1918 and which did not specify the ground upon which it was made, one of the grounds of the motion for such new trial having been the "insufficiency of the evidence to justify the verdict."

---

1. See 20 Cal. Jur. 106; 20 R. C. L. 271; 25 R. C. L. 786.

[2] ID. — EVIDENCE—AFFIRMANCE OF ORDER.—On an appeal from an order made in 1918 granting defendants a new trial without specifying the ground upon which the same was granted, one of the grounds of the motion for a new trial having been the "insufficiency of the evidence to support the verdict," if there is sufficient evidence to support a judgment in favor of defendants the order must be affirmed.

[3] ID.—BRIEFS—DETERMINATION OF APPEAL.—In the absence of any brief on the part of the respondent the appeal may be determined upon those portions of the record printed in appellant's brief.

[4] ID.—NEW TRIAL—EVIDENCE—FINDINGS.—The trial court, in passing on a motion for a new trial on the ground of insufficiency of the evidence to justify the verdict is not bound by the findings of the jury where there is sufficient evidence to sustain a contrary finding. Where the evidence is substantially conflicting, the action of the trial court in granting a new trial will not be disturbed on appeal.

[5] MINING LAW — LOCATION OF CLAIM — MARKING AND NOTICE OF— SUFFICIENCY OF.—Where a locator of a mining claim marked the claim on the ground by driving square stakes, four inches in diameter and extending eighteen inches above the surface, at both ends and the middle of the center line of the claim and at the four corners of the claim, and piling rocks around them, and posted notices on the center line and corner stakes, and caused a copy of the notice to be recorded, which notice in effect declared that the locator, a citizen over the age of twenty-one years, had on a stated day located a claim "fifteen hundred linear feet along the course of this lead, lode or vein of mineral bearing quartz and three hundred feet in width on each side of the middle of said lead, lode or vein, together with all mineral deposits contained therein and all timber growing within the limits of said claim and all water and water privileges, thereon or appurtenant thereto, situate" in a named mining district "and more particularly described as follows, to-wit: Commencing at a stake in cañon due south Fifteen Hundred feet to stake marked P. C.," such marking on the ground and notice were sufficient to put a subsequent locator upon inquiry as to the nature and extent of said locator's claim.

[6] ID.—OPTION TO PURCHASE CLAIM—PAYMENTS—TIME—FORFEITURE. Where an option to purchase a mining claim expressly made time of its essence and provided that upon the failure of the optionee

---

3. See 2 Cal. Jur. 724; 2 R. C. L. 176.

4. See 20 Cal. Jur. 111, 117; 2 R. C. L. 204; 20 R. C. L. 275.

5. See 17 Cal. Jur. 329, 338; 18 R. C. L. 1129.

6. See 17 Cal. Jur. 422; 6 Cal. Jur. 55; 18 R. C. L. 1182; 6 R. C. L. 603.

to make the payments therein provided, the option agreement should terminate and be at an end and all rights were to be forfeited, the failure by the assignee of the optionee to make the required payments forfeited all its rights under the option.

[7] ID. — OPTIONS — TIME. — Time is generally of the essence of an option to purchase whether so expressed or not.

[8] ID.—DEEDS—TITLE — BANKRUPTCY. — Where a bankrupt corporation, which had forfeited its right to a mining claim, had no interest in a part of another claim overlapping the first-mentioned mining claim, if the latter was valid, the deed of the trustee of said bankrupt corporation purporting to convey the overlap passed no title to a purchaser at the trustee's sale of said other claim.

[9] EJECTMENT—OVERLAPPING MINING CLAIM—SUFFICIENT MARKING OF LOCATION—FACT.—In an action of ejectment to recover a portion of a mining claim overlapping an adjoining claim, the question of whether the location of said adjoining claim was sufficiently marked on the ground was one of fact.

[10] ID.—ORDER GRANTING NEW TRIAL—MARKING OF LOCATION—PRESUMPTIONS — FINDINGS—APPEAL.—In such action, it must be presumed, in support of the order granting a new trial to defendants, who were seeking to uphold the adjoining claim that the trial court found, upon the conflicting evidence, that the location of the adjoining claim was sufficiently marked, and such finding is conclusive on appeal.

[11] ID.—NEW TRIAL—ORDER GRANTING ERRONEOUS AS TO DEFENDANTS WITHOUT INTEREST IN PROPERTY. — In such action, the evidence having shown that certain defendants had no interest in the property, the order granting a new trial as to them, after judgment for plaintiff, was erroneous.

---

(1) 4 C. J., p. 785, sec. 2736 (Anno.).   (2) 4 C. J., p. 905, sec. 2874.   (3) 3 C. J., p. 1446, sec. 1607 (Anno.).   (4) 4 C. J., p. 905, sec. 2874; 29 Cyc., p. 832.   (5) 27 Cyc., pp. 568, 572.   (6) 27 Cyc., p. 673.   (7) 35 Cyc., p. 56; 39 Cyc., p. 1241.   (8) 7 C. J., p. 242, sec. 378.   (9) 19 C. J., p. 1194, sec. 278; 27 Cyc., p. 567.   (10) 4 C. J., p. 778, sec. 2728, p. 845, sec. 2831.   (11) 29 Cyc., p. 736 (Anno.).

APPEAL from an order of the Superior Court of Fresno County granting a new trial.  D. A. Cashin, Judge.  Reversed in part; affirmed in part.

---

9.  See 17 Cal. Jur. 342; 18 R. C. L. 1130.

10.  See 20 Cal. Jur. 215; 2 Cal. Jur. 921; 20 R. C. L. 275; 2 R. C. L. 204.

The facts are stated in the opinion of the court.

Sidney Rhein and Frank J. Golden for Appellant.

C. K. Bonestell and W. D. Crichton for Respondents.

FINCH, P. J.—Plaintiff sued in ejectment to recover possession of certain mining ground alleged to be included in an unpatented claim known as the ''Durable.'' The answer denied the allegations of the complaint. The jury returned a verdict in favor of plaintiff for the restitution of the premises. Judgment was entered accordingly and the defendants moved for a new trial on the ground, among others, of ''insufficiency of the evidence to justify the verdict.'' On the 3d of July, 1918, the court made an order granting the motion without specifying the ground upon which the same was granted. This appeal is from the order so made. **[1]** The amendment of section 657 of the Code of Civil Procedure in 1919 (Stats. 1919, p. 141), providing that unless the order granting a new trial shall specify that it is made upon the ground of insufficiency of the evidence to sustain the verdict, it will be presumed on appeal that the order was not based upon that ground, can have no application to this appeal. **[2]** If there is sufficient evidence, therefore, to support a judgment in favor of defendants the order must be affirmed.

Appellant's opening brief was filed March 17, 1923. The attorneys for respondents have filed no brief, although they have been given every opportunity to do so. **[3]** ''In the absence of any brief on the part of the respondent the appeal may be determined upon those portions of the record printed in appellant's brief.'' (*Lutz* v. *Merchants' Nat. Bank,* 179 Cal. 401, 404, [177 Pac. 158, 159].) The appellant's opening brief contains 241 printed pages, made up principally of the testimony taken at the trial.

Defendant Elizabeth Northam introduced evidence tending to show that she was the owner of a mining claim known as the ''Powder House,'' that it overlaps the Durable claim some 500 feet and was located prior to the location of the Durable. This controversy is as to the overlapped territory. The jury answered in the negative the following special

interrogatory: "Did A. R. Wortham mark the boundaries of the Powder House Claim sufficiently clear to enable them to be readily traced at the time such marking was made considering the surface of the land on which the location was made and the country surrounding it at the time?" Appellant says in his brief: "This finding of the jury entirely eliminated any question as to whether or not the Durable overlaps the Powder House, for, according to the verdict of the jury, no such claim as the Powder House has ever existed." [4] This argument would be logical if the appeal were from the judgment, but the trial court, in passing on a motion for a new trial on the ground of insufficiency of the evidence to justify the verdict, is not bound by the findings of the jury, where there is sufficient evidence to sustain a contrary finding. Where the evidence is substantially conflicting, the action of the trial court in granting a new trial will not be disturbed on appeal.

A. R. Wortham testified that he located the Powder House claim in the year 1907; that the center line of the claim followed the course of the mineral ledge, the point of discovery being at the middle of the center line; that he marked the claim on the ground by driving square stakes, four inches in diameter and extending eighteen inches above the surface, at both ends and the middle of the center line and at the four corners of the claim, and piling rocks around them, and that he posted notices on the center line stakes, and subsequently on the corner stakes, and caused a copy thereof to be recorded, reading as follows:

"Notice of Location—Quartz Claim.

"Notice is hereby given that the undersigned citizen of the United States over the age of twenty-one years has, in compliance with the requirements of the Revised Statutes of the United States this day located a claim fifteen hundred linear feet along the course of this lead, lode or vein of mineral bearing quartz and three hundred feet in width on each side of the middle of said lead, lode or vein, together with all mineral deposits contained therein and all timber growing within the limits of said claim and all water and water privileges, thereon or appurtenant thereto, situate in the Fresno mining district and more particularly described as follows, to-wit:

"Commencing at a stake in cañon due south Fifteen Hundred feet to stake marked P. C.

"This claim shall be known as the Powder House Quartz Claim.

"Located this 30th day of August, 1907.

"A. R. WORTHAM.

"Witnesses: J. NORRISH.

        "S. B. BROGAN."

No reason is shown why the foregoing is not a sufficient compliance with the statute requiring that "the location must be distinctly marked on the ground so that its boundaries can be readily traced." (U. S. Rev. Sats., sec. 2324 [U. S. Comp. Stats., sec. 4620]: *McKinley Creek Mining Co.* v. *Alaska United Mining Co.*, 183 U. S. 563 [46 L. Ed. 331, 22 Sup. Ct. Rep. 84, see, also, Rose's U. S. Notes].) [5] In any event, such marking on the ground and notice were sufficient to put a subsequent locator upon inquiry as to the nature and extent of Wortham's claim. (*Stock* v. *Plunkett*, 181 Cal. 193, 194 [183 Pac. 657].)

September 23, 1911, a corporation known as the Mercy Mining and Development Company, of which Wortham was a director, for a valuable consideration, gave one S. D. Chittenden an option to purchase the Powder House claim and other property for $50,000: $300 cash; $9,700 at the end of seven months; $10,000 in thirteen months; $10,000 in nineteen months and $20,000 in twenty-five months. The option agreement required Chittenden to erect a "furnace of at least twenty ton daily capacity" at a convenient place on the property. The agreement expressly made time of its essence and provided that upon the failure of Chittenden to make the payments therein provided or to perform any "other terms and conditions" thereof, "then this contract shall terminate and be at an end." The final clause reads as follows: "This contract runs in favor of and is binding upon the heirs, executors, administrators, successors and assigns of the parties hereto; it being understood, however, that no personal obligation is imposed upon the party of the second part to buy; it being understood that if the payments are not made all rights are forfeited, including all payments and improvements up to the forfeiture." On the 26th of October, 1911, Chittenden transferred all of his rights under

the option agreement to the Pacific Quicksilver Company, a corporation. The Mercy Mining and Development Company delivered possession of the property to the Pacific Quicksilver Company and pointed out to the superintendent of the latter company one of the stakes of the Powder House claim. There was at that time on the ground in dispute an experimental rotary furnace, two concrete condensers, and "cars and tools necessary for work," all of which were delivered with the mining claim. The Pacific Quicksilver Company made the first deferred payment of $9,700, but no further payments were made on the option. The company expended about $30,000 in making improvements on that part of the Powder House claim which is overlapped by the Durable. May 26, 1914, E. A. Waldron located the Durable claim. October 7, 1914, a petition in involuntary bankruptcy was filed against the Pacific Quicksilver Company and on the first day of March, 1915, it was duly adjudged a bankrupt. After the filing of the petition and prior to such adjudication, on the 24th of December, 1914, Waldron conveyed the Durable claim to the corporation. May 14, 1915, pursuant to a sale theretofore made in the bankruptcy proceedings, the trustee in bankruptcy executed a deed purporting to convey the Durable claim, described by courses and distances which include the overlapping strip, and certain other property to the plaintiff for the sum of $1,500. The deed was recorded May 17, 1915.

April 23, 1912, the Mercy Mining and Development Company joined with A. R. Wortham in a conveyance of the Powder House claim and the other property described in the Chittenden option to E. F. Northam. Thereafter E. F. Northam died and on the twenty-second day of May, 1914, all the property of his estate was distributed to defendant Elizabeth Northam. July 7, 1914, Mrs. Northam commenced an action against the Pacific Quicksilver Company to quiet her title to the Powder House claim and other property covered by the Chittenden option. No *lis pendens* was filed. May 26, 1915, judgment was entered quieting Mrs. Northam's title to the property described in her complaint. August 6, 1915, by virtue of a writ of possession issued by the superior court, the sheriff placed Mrs. Northam in possession of the property in dispute.

[6] It is clear from what has been stated that the Pacific Quicksilver Company had forfeited all its rights under the Chittenden option long prior to the insolvency proceeding. That option, by the express provisions thereof, had come to an end. Time was expressly made of the essence thereof. [7] Time is generally of the essence of an option to purchase whether so expressed or not. (*Rice Lands etc. Co.* v. *Blevins,* 61 Cal. App. 536, 541 [215 Pac. 402].) [8] Since the bankrupt had no interest in the property in dispute, if the Powder House claim is valid, the trustee's deed purporting to convey such property passed no title to plaintiff. (*Cramer* v. *Wilson,* 195 U. S. 409 [49 L. Ed. 256, 258, 25 Sup. Ct. Rep. 94, see, also, Rose's U. S. Notes].)

It may be conceded that plaintiff made out a *prima facie* case by proving his peaceable possession of the premises and his ouster therefrom under the writ of possession. The question then of Mrs. Northam's right to a new trial is dependent upon the validity of the Powder House location. [9] Appellant correctly states that whether the location was sufficiently marked on the ground is a question of fact. [10] It must be presumed in support of the order granting a new trial that the court found, upon the conflicting evidence, that the location of the Powder House was sufficiently marked. That finding is conclusive on appeal. [11] The evidence shows clearly that the other defendants have no interest in the property. The order granting a new trial was therefore erroneous as to such defendants.

The order is affirmed in so far as it grants a new trial to defendant Elizabeth Northam and reversed as to the other defendants, appellant to recover costs of appeal from respondents other than Elizabeth Northam.

Plummer, J., concurred.