[S. F. No. 11757. In Bank.—January 26, 1928.]

JOS. ROSENBERG et al., Copartners, etc., Respondents, v. GEO. A. MOORE & CO. (a Corporation), Appellant.

212

Knight, Boland, Hutchinson & Christin and Knight, Boland & Christin for Appellant.

Brownstone & Goodman for Respondents.

SHENK, J.—This is the second appeal in this case. The first trial resulted in a verdict in favor of the defendant on its cross-complaint for the sum of $8,331.25, which included $6,000 on account of three promissory notes executed by the plaintiffs to the defendant in connection with the transactions involved herein and expenses incurred by defendant in disposing of rejected goods in the open market. The defendant appealed from an order granting to the plaintiffs a new trial. The order was affirmed. (*Rosenberg* v. *Moore*, 194 Cal. 392 [229 Pac. 34].) The opinion in the disposition of that appeal is referred to for a more particular statement of the facts which gave rise to the controversy between these parties. A second trial was had, wherein a verdict was rendered in plaintiffs' favor in the sum of $8,500. From the judgment entered on that verdict the defendant now prosecutes this appeal.

It is conceded that the proof adduced on both trials was substantially the same. Briefly, after examining a satisfactory sample order, the plaintiffs, in February, March, and April, 1921, entered into eight contracts with the defendant for the purchase of wiping rags to be shipped from Antwerp by Heymann & Co., payment to be net cash on presentation of documents in San Francisco. Before the first shipment under these contracts arrived plaintiffs inspected a shipment of wiping rags from Heymann & Co. consigned to Charles Harley Company, which contained a large percentage of shoddy material not suitable for wiping rags, and notified defendant that if shipments pursuant to its contracts with defendant were of that character they would reject the entire lot. The situation became serious and Heymann came from Belgium to San Francisco. Heymann and both parties inspected the first shipment to arrive. As a result of this inspection it was found that the bales comprising the shipment contained large percentages of materials which were not wiping rags. It was admitted by the defendant and Heymann, that if the plaintiffs were to accept the shipments they should be entitled to reject the shoddy and obtain allowances therefor. By an interchange of letters the parties then agreed that the plaintiffs would pay for and accept shipments under the contracts and that the defendant would make refund for all material rejected.

Thereafter and before the sorting of the shipments had been completed the defendant questioned the amount of the rejections which should be allowed, and as a consequence of this disagreement the plaintiffs notified the defendant that they would accept no further shipments, and the defendant notified the plaintiffs that it refused to admit the right of plaintiffs to make any claim for rejects. Plaintiffs discontinued sorting, averaged the amount of rejects in the portion of the shipments which still remained unsorted, and brought action against the defendant for the amounts claimed to be due as refunds and for damages for breach of the various contracts. Defendant filed its cross-complaint, seeking recovery on said three promissory notes of $2,000 each executed by plaintiffs as part of one of the payments, and for damages for breach of the several contracts. This court, on the former appeal, held that regardless of the European standards of wiping rags the plaintiffs were entitled, under their original contracts, to receive rags which had wiping or absorbent qualities, and that the original contracts had been modified by the interchange of letters so as to entitle the plaintiffs to reimbursement for material rejected. Those letters were dated July 11 and 12, 1921. Concerning the effect of the letters it was held on the former appeal: "Those letters were written after a controversy arose as to the scope of the contracts and constituted a definite proposal on the part of the plaintiffs that the rags should be sorted, and that the rags which were not wiping rags should be rejected and an acceptance of said proposal by the defendant with the understanding that the refunds would be made after the invoices had been paid. To the extent therein provided, we think those letters constituted a modification of the original contracts." (*Rosenberg* v. *Moore, supra,* pp. 403, 404.)

It is the first main contention of the defendant that under the contracts as so modified the plaintiffs were required to accept and pay for the rags as tendered upon presentation of documents as specified in the original contracts, thereupon to sort the rags, reject such as were not wiping rags and then make claim upon the defendant for refund. The evidence showed without contradiction that some of the shipments were paid for in full upon presentation of documents, and there would be much force in the contention of the defendant that, under the contracts as modified by the letters

of July 11th and 12th, the plaintiffs could not claim refunds for rejections without first paying in full for the other shipments after presentation of documents, if it were not for the fact that the defendant repudiated the contracts as so modified by its subsequent letter of July 23, 1921, addressed to the plaintiffs and reading, so far as pertinent, as follows: " . . . referring to ours of the 12th inst., replying to yours of the 11th inst., please note that after the inspection of the wiping rags held at your warehouse on the 19th inst., we cannot admit that you are entitled to make any claim for rejection." After the defendant had assumed this attitude with reference to the contracts as modified it is clear that the plaintiffs were not required to make further payments as a prerequisite to their claims against the defendant. (See *Poalini* v. *Sulprizio,* 201 Cal. 683 [258 Pac. 380]; *Los Angeles Corp.* v. *Amalgamated Oil Co.,* 168 Cal. 140 [142 Pac. 46]; *Alderson* v. *Houston,* 154 Cal. 1, 12 [96 Pac. 884]; *DeProsse* v. *Royal Eagle Co.,* 135 Cal. 408, 411 [67 Pac. 502]; 6 Cal. Jur. 400.)

This brings us to a consideration of the second main contention of the defendant, namely, that the amount of the plaintiffs' claim on account of rejections was not proved by competent evidence. In this connection it should be observed that the defendant admitted at the trial and now admits that the plaintiffs were entitled to recover for the amount of rags actually and properly rejected from shipments which had been accepted and paid for. At the trial the defendant went further and conceded that the plaintiffs were entitled to credit for rejections, if they were not wiping rags and were properly rejected, and that it was the province of the jury to determine how much of the material was properly rejected. The controversy is thus narrowed to the question of whether there was competent evidence to prove that the plaintiffs were entitled to recover for rejections at least to the amount of the present verdict. By their amended complaint the plaintiffs prayed for judgment for $48,357.81, some $16,500 of which was the aggregate amount of claims for refund and the balance was for damages for breach of the contracts in suit. When the verdict is viewed in the light of the evidence, it is difficult to resist the conclusion that the court and jury must have considered, and rightly so, that both parties had breached the contracts; that neither

party was entitled to damages by reason of any breach of the buying or selling clauses of the original contracts, and that the amount of any verdict for the plaintiffs should be for the amount only of the plaintiffs' claim for rejections less the amount due the defendant on the promissory notes and less any further amount that should be allowed to cover any alleged error in the ascertainment of the amount of the rejects. As to a considerable portion of the shipments, the bales were opened and manually sorted, the good was segregated from the bad and each lot separately weighed and the result tabulated. This method of sorting was followed until, it is fair from the evidence to assume, the defendant took the position that it would not recognize any right on the part of the plaintiffs to reimbursement or claim on account of rejections, at which time the remainder of the bales was inspected and an average of the good and the bad was struck.

It is insisted by the defendant that there was no competent evidence showing the amount of the material manually sorted and weighed. The plaintiff Joseph Rosenberg testified that these rags were sorted under his direction and supervision; that he was present from sixty per cent to seventy-five per cent of the time that the sorting was being done; that he was actually present when the rejects were weighed; that the weight thereof was noted on tags by his employee in his presence, and that he, Rosenberg, added up the items on the various tags and knew the same to be correct. If he was present when the rejected material was weighed and knew the same to be correct, it would seem to be of no consequence that he was not personally present when all the sorting was done, for when the weight of the rejects was ascertained it was a matter of computation to fix the weight of the remainder, as the total weight of the material was known and was not disputed. Nor was it necessary that the testimony of the employee who noted the weight of the rejects on the tags be produced if, as was shown, Rosenberg was present when the weights were taken and knew that the same were correct.

It is also insisted by the defendant that the court erred in permitting evidence of the rejections that were averaged and not manually sorted. In order to arrive at an average of the good wipers and rejections in the remainder

of the shipment, the plaintiffs employed inspectors of merchandise whose qualifications as men having expert knowledge of this class of merchandise were, we think, sufficiently established at the trial. These witnesses attended the inspection of the goods at the warehouse. Six bales were selected at random. Their actual weight was first determined; they were opened and sorted by the plaintiffs' crew employed for that purpose. That this crew properly performed its work in sorting the rags is not questioned. The actual weight of the accepted and rejected rags was taken and tabulated. The proportion of the good rags or wipers in these bales was found by one inspector to average 25.14 per cent and the rejections to average 74.86 per cent of the whole. This percentage was arrived at by actual sorting and weight. Other experts whose testimony was received in evidence were present when the sorting and inspection of the six bales, or some of them, took place.

The percentages of wipers and rejections in the remaining bales not opened were undoubtedly fixed in accordance with the percentages arrived at in the inspection of the six bales. The defendant produced no evidence on the subject.

The plaintiffs have cited cases in this and other jurisdictions and the statements of text-writers to the effect that in arriving at the total amount, weight, size, quality, etc., of produce, merchandise, and other forms of personal property which is the subject of ordinary barter and sale, estimates may be made of the whole by a definite ascertainment as to less than the whole, and that evidence of such estimates is not subject to the objection that it is merely the opinion or conclusion of the witness. These authorities need not be referred to, for the defendant does not dispute the rule, but contends that the rule does not fit the facts in this case. It is stoutly insisted that the verdict is the result, in large part at least, of averages or estimates applied by the jury without any evidence as to who averaged the goods, where they were averaged, or what basis was used for averaging. As noted, the total number of bales was a known quantity, the goods were in the warehouse, six bales were selected at random for actual sorting, and the amounts of wipers and rejects therein accurately ascertained. On the record here presented we think the jury was entitled to infer that the balance of the merchandise was the same or substantially the

same as that actually sorted, and it was not essential to a proper verdict under the particular facts in this case that some witness state that the average of the goods not sorted was in weight and quality the same as that sorted. ▮ If there be any doubt of the right of the jury to draw such inferences from the evidence herein, it was in evidence by a telegram from the defendant addressed to Alfred Heymann at New York City and dated July 19, 1921, to the effect that the defendant and its representatives and experts had examined the merchandise, had opened up several bales and had agreed that certain of the rags "could not be justified as wipers before any court, and that the rejections which could be justified would run over seventy-five per cent more nearly eighty to ninety." The defendant seeks to avoid the effect of the admissions contained in that telegram by asserting that it was sent to Heymann at a time when the plaintiffs and the defendant were endeavoring to compromise their differences, and that the statements therein contained as to the percentages of rejections which could be justified were based on information furnished by the plaintiffs. In the first place, the telegram was from the defendant to Heymann, the defendant's European vendor, and could on no reasonable theory be deemed evidence of an attempted compromise between the plaintiffs and the defendant. It constituted an admission against interest on the part of the defendant to a third party and was admissible for that purpose. Furthermore, in said telegram the defendant stated to Heymann that on that morning, July 19th, "Juell Duval Moore and representing us surveyor Seale chief storekeeper of Union Works and contractor for cleaning tankers here twenty-five years standing together with Rosenberg and two friends of his opened up several bales of heavy dark cottons and linseys one bale of dark wipers one bale of light wipers. Each and every piece was thoroughly sorted out and examined," with the results in percentages of rejections estimated by the defendant in said telegram. Juell and Duval Moore were defendant's representatives. The statements in the telegram sufficiently meet the defendant's present contentions. If such statements were true, the defendant cannot complain of an implied finding of the jury in accordance therewith. If they were not true the defendant, on familiar principles of law, should not now be heard to complain. The

jury no doubt accepted as approximately correct the plaintiffs' computations as to the amount and value of the rejections. In fact, it appears that the jury gave due allowance for any exaggerated percentages of rejections and arrived at a sum much less than the plaintiffs' estimates. Deducting from the value of the rejects as found by the jury the amount of the promissory notes pleaded in the cross-complaint it is apparent that the trial resulted in a just verdict based on sufficient evidence.

The judgment is affirmed.

Langdon, J., Preston, J., Curtis, J., Richards, J., Seawell, J., and Waste, C. J., concurred.

Rehearing denied.

All the Justices present concurred.