[Civ. No. 7654. First Appellate District, Division One.—February 28, 1931.]

CHARLES B. DREYER et al., Appellants, v. FRED B. CYRIACKS, Respondent.

John T. Mulligan and Gerard K. Remington for Appellants.

Bailie, Turner & Lake and W. I. Gilbert for Respondent.

KNIGHT, J.—While the plaintiff Faust, accompanied by two companions, named Richardson and Kempin, were leaving the home of the defendant Cyriacks in an automobile following a quarrel which had taken place there, Cyriacks fired three shots from a rifle at the automobile. One of the bullets embedded itself in the spare tire, another hit Kempin's hat and the other penetrated the rear of the automobile and struck and killed a dog belonging to plaintiffs, which, unknown to Cyriacks, was riding on the rear seat with Kempin. Thereafter plaintiffs brought this action for damages for the killing of the dog and upon trial in the Superior Court of Los Angeles County a jury awarded them $100,000 actual and $25,000 punitive damages. The trial court set aside the verdict and granted a new trial, one of the grounds therefor being that the verdict was excessive.

The dog was of the breed known as German police dog, and the scene of the shooting was in or near Hollywood, the dog being worked in the moving picture industry and known as ''Peter the Great''. All of the interested parties to this controversy are connected with the same industry. The circumstances leading up to the shooting are sharply conflicting, and it would be unnecessary to inquire into them except that under section 3340 of the Civil Code exemplary damages may be awarded ''for wrongful injuries to animals being subjects of property, committed wilfully or by gross negligence, in disregard of humanity''; and the jury awarded plaintiffs an extra $25,000 to cover such element. It appears from the evidence that on the night of the shooting all of the parties had been drinking, and that there was considerable animosity existing between Faust and Cyriacks which arose over the fact that several days previously Faust had called at Cyriacks' home while he was away and as he claims insulted his housekeeper.

The shooting took place shortly after dark. Late that afternoon Richardson and his wife were making a call at Faust's house and a quarrel took place between Richardson and his wife, because she persisted in petting Peter the

Great after he had shown a dislike for her by snapping at her; and Mrs. Richardson left. Thereupon Richardson and Faust started out to find her in Richardson's automobile, taking Kempin and Peter the Great along with them in the back seat. After searching the streets in the immediate vicinity they went to Cyriacks' house, where he was entertaining some friends, to see if she was there. Faust testified that he went to the door and inquired for Mrs. Richardson and that after a few words Cyriacks struck at him; that Richardson then came up and asked for his wife; whereupon Cyriacks sicked his police dog on Richardson; that Cyriacks then turned to go into the house for his gun, and that as he did so Faust and Richardson returned to the automobile and started to drive away; that they had proceeded about halfway down the driveway when Cyriacks began shooting, with the result already stated. Faust's testimony was supported generally by the testimony of Richardson. Cyriacks gave conflicting accounts of the shooting, but the substance of the testimony he gave in court was as follows: He stated that Faust appeared at his door and asked for a drink; that observing that Faust had already been drinking, he told him that he had had enough; whereupon Faust told Cyriacks to bring out his, Cyriacks', dog and he would throw him in the fish pond; that he then took Faust by the arm, and as they proceeded toward the fish pond Cyriacks' dog ran out toward the automobile; that he called the dog back and Faust struck the dog over the nose; that Cyriacks then struck Faust and knocked him down; that Faust then dashed into Cyriacks' house, grabbed a revolver from a holster hanging near the door and called to Richardson to bring his gun; that Cyriacks then went into the house, brought out his rifle and fired down the driveway; that Faust and Richardson then got in the automobile and drove away. The guests at Cyriacks' house corroborated his statements. Cyriacks denied knowing that Kempin or Peter the Great were in the automobile, and there is no testimony in the record to show that he had any reason to believe they were there.

■ The well-settled rule is that the matter of granting or refusal to grant a motion for a new trial is largely within the discretion of the trial court (*Work* v. *Whittington*, 61 Cal. App. 302 [214 Pac. 474]); that in passing upon such motion the trial court is not bound by the rule of conflicting

evidence as is the appellate tribunal (*Huckaby* v. *Northam*, 68 Cal. App. 83 [228 Pac. 717]; *Smith* v. *Royer*, 181 Cal. 165 [183 Pac. 660]); but must weigh and consider the evidence for both parties and determine for itself the just conclusion to be drawn from it (*Green* v. *Soule*, 145 Cal. 96 [78 Pac. 337]; *Rudin* v. *Luman*, 53 Cal. App. 212 [199 Pac. 874]); and if it is satisfied that the finding of the jury is contrary to the weight of the evidence it may grant a new trial (*Gordon* v. *Roberts*, 162 Cal. 506 [123 Pac. 288]).

■ Even where the evidence is not conflicting and all the proof seems to be favorable to one or the other of the parties litigant, the question of the probative force or the evidentiary value of the testimony is nevertheless within the determination of the trial court in a proceeding on motion for a new trial. (*Otten* v. *Spreckels*, 24 Cal. App. 251 [141 Pac. 224]; *Roberts* v. *Southern Pac. Co.*, 54 Cal. App. 315 [201 Pac. 958].) ■ It may be conceded that the rule controlling in cases where the reviewing court is asked to reverse a judgment upon the ground of excessive verdict, after the trial court has refused to set aside the same, is that the verdict must stand unless it is so grossly disproportionate to any reasonable limit of compensation warranted by the facts as to shock the sense of justice, and raise at once a strong presumption that it is based on prejudice, passion or corruption, rather than sober judgment. (*Szasz* v. *Joyland Co.*, 84 Cal. App. 259 [257 Pac. 871]; *Reneau* v. *Hirsch*, 88 Cal. App. 1 [262 Pac. 1100]; *Morris* v. *Standard Oil Co.*, 188 Cal. 468 [205 Pac. 1073].) ■ But where, as here, we are asked to review the act of the court, where in the exercise of its discretionary power it has seen fit to set aside the verdict on this ground, a very different rule prevails. Every intendment is to be indulged here in support of the action of the court below, and it will not be disturbed if the question of its propriety be open to debate. (*Harrison* v. *Sutter Street R. Co.*, 116 Cal. 156 [47 Pac. 1019].)

■ Furthermore, where a trial court grants a new trial upon the ground that the verdict is excessive, the declaration of the court that it is excessive does not necessarily mean that the trial court was of the opinion that the verdict was the result of passion or prejudice. It is susceptible of the interpretation that the trial court was not satisfied that the

finding of the jury as to the extent of the damage suffered by the plaintiff was supported by the evidence adduced upon that phase of the case. (*Meinberg* v. *Jordan*, 29 Cal. App. 760 [157 Pac. 1005, 1007].)

In the present case several witnesses estimated the value of the dog to be from $150,000 to $200,000, but in view of the other testimony in the case showing the amounts the dog had earned, etc., it is obvious the estimates fixed by these witnesses were fabulous, and based entirely on fanciful speculation. Consequently, under the authorities above cited the trial court was not bound to accept the same and was more than justified in holding that the award of $100,000 was grossly excessive. Moreover, it would seem to require no discussion to point out that under the circumstances under which the shooting took place, the award of $25,000 as punitive damages was likewise grossly excessive.

With reference to the question of the amount of the verdict plaintiffs have cited us to an array of cases from thirty states of the Union and from England and Canada. But not one of them relates to the destruction of an animal. They all concern the death of or injury to human beings, and it is absurd to argue that in fixing damages the value of human lives and the value of dogs are to be measured by the same standard. As declared in section 491 of the Penal Code, "Dogs are personal property, and their value is to be ascertained in the same manner as the value of other property," but certainly the value of a human life is not to be so determined.

Plaintiffs say in their brief: ". . . it must be remembered, that Peter the Great was a motion picture star, he was a gift to humanity. 'Peter the Great' is a name that will go down in history as the most human like dog that ever displayed its skill in a film drama. His name was a symbol of loyalty, devotion, nobility, and heroic exploits. Peter the Great, king of the silver screen, was the playmate of mankind. He lived and struggled, suffered and sacrificed, to make countless thousands happy and cheerful. He made the multitude laugh and cry, wonder and admire. Peter the Great sent them to their homes with pictures of high ideals and unselfish service; the clean, and pure, the good in thought, example and action. Peter the Great was a by-word

of every household, a wonderword to every child lover of the motion picture world. And when he came to the last scene, in the drama of life, when the curtain of death was slowly ringing down and he was going into that long, long sleep, I know he felt that it was only a new act he was performing as a part of his life work, as a part of some cruel tragedy, and he seemed to smile as the lights went out.'' Whatever virtue there may be in the foregoing sentiments as a tribute to the memory of Peter the Great, they certainly carry little convincing force as a legal argument in support of the theory that the measure of damages for the destruction of a dog is or should be the same as the one applied in actions growing out of the death of a human being.

The conclusion we have reached upon the action of the trial court in granting a new trial upon the ground that the verdict was excessive makes it unnecessary to consider the second ground upon which the order was based, namely, erroneous instructions.

The order appealed from is therefore affirmed.

Tyler, P. J., and Cashin, J., concurred.