[Civ. No. 11897.    Second Appellate District, Division One.—June 11, 1940.]

CONSTANCE BENNETT de la FALAISE, Appellant, v. GAUMONT–BRITISH PICTURE CORP., LTD., Respondent.

462

Barry Brannen for Appellant.

Don Marlin for Respondent.

YORK, P. J.—The record herein reveals that appellant entered into a contract with respondent whereby she agreed to render services as a motion picture actress in the production by respondent of two photoplays entitled ''Everything is Thunder'' and ''The Hawk,'' each picture to be produced in

London, England, to be completed within a reasonable time following the starting date, and neither to require appellant's services for a period of more than eight weeks. For such services appellant was to receive from respondent "10% of the U. S. A. gross distribution receipts from the distribution of said two motion pictures . . . and as a guaranteed advance for each production on account of such percentage $30,000 in cash, . . . also . . . the additional sum of $5,000 on each picture . . . which sum, however, is not an advance and is not to be recouped . . . from the percentage due (appellant) from gross receipts of distribution." All such moneys due appellant to be paid to her in the United States through respondent's subsidiary company, Gaumont-British Picture Corporation of America.

The first picture "Everything is Thunder" was produced and completed, appellant receiving on account thereof the $30,000 guaranteed advance and the additional sum of $5,000 provided by said contract.

With respect to the second picture "The Hawk", said contract provided that the starting date for the same should be not later than November 14, 1936, not earlier than September 1, 1936, and in any event appellant was to receive notice of the precise starting date not later than August 1, 1936. This second picture was not made and appellant never received notice of the starting date thereof, nor was anything ever paid her on account of said production.

In March, 1937, appellant brought the instant action for breach of contract against respondent, the complaint alleging that said breach consisted in the failure of respondent to advise appellant of a starting date for said production, the refusal of said company to produce the second picture, and to pay the compensation provided for appellant's services therein, notwithstanding she was ready, able and willing to perform her part of the said contract. In a second cause of action against respondent and its American subsidiary, appellant sought an accounting of the gross proceeds resulting from the distribution of the first photoplay in the United States. During the trial appellant dismissed her second cause of action without prejudice to both defendants, which eliminated the Gaumont-British Picture Corporation of America from the case, leaving Gaumont-British Picture Corporation, Ltd., the sole respondent herein. Appellant also

waived her right to recover from respondent on her first cause of action more than $35,000, the minimum compensation guaranteed for her services in the second picture.

It was brought out at the trial, in addition to the facts hereinbefore narrated, that early in the summer of 1936 appellant made arrangements to make the fourth and last picture required under a contract dated June 30, 1933, between her and Twentieth Century-Fox Film Corporation. By this arrangement appellant agreed to commence this picture entitled "Ladies in Love" on July 13, 1936, and to continue her services with the aforementioned company until its completion, the estimated "shooting schedule" for the same being not more than six weeks. Appellant received compensation for such services from said July 13th to August 22d, although, because she had been ill during the filming thereof, she gratuitously continued to render her services in connection with said picture for an additional period of thirteen days, or until September 4, 1936. It was further shown that appellant's agent made diligent attempts to secure employment for her as a motion picture actress but that appellant received no offers of employment and no compensation for her services in motion pictures between September 1, 1936, and January 1, 1937. However, she did receive the sum of $4,000 for two radio engagements on September 5 and 17, 1936, which took place in the evening at half past five and nine o'clock, respectively.

Respondent alleged in its answer that after the first picture was completed, the contract was mutually cancelled at a meeting between appellant's agent, William Hawks, and respondent's representative, Larry Darmour, which took place in May, 1936. However, the testimony of these two men established the fact that they failed to arrange for such a cancellation. Furthermore, in a letter written on June 12, 1936, by appellant to Michael Balcon, a representative of respondent, which was introduced in evidence as plaintiff's exhibit 2, appellant expressed in strongest terms her desire and intention to render her services in the second picture.

No conflict appears to exist either in the factual situation or in the evidence adduced at the trial herein which was heard by the court sitting without a jury.

This appeal is prosecuted from that part of the judgment which limits the amount of appellant's recovery to $31,000 by

deducting from the $35,000 guaranteed under the contract, the sum of $4,000 received by appellant for her services in radio broadcasts during the month of September, 1936. She also appeals from the order granting respondent's motion for a new trial.

In her appeal from the order granting the motion for a new trial, appellant contends that respondent's breach of contract is established by uncontradicted evidence, hence no issues of fact are involved and the questions on appeal relate wholly to the sufficiency of the evidence as a matter of law to support the judgment.

With respect to her appeal from the judgment, appellant urges that the measure of damages for breach of the contract is the sum of $35,000 and that the sum of $4,000 received by her in radio engagements was not earned during any period when respondent was entitled to her services and, therefore, cannot be offset in mitigation of damages.

While the minute order granting respondent's motion for a new trial specifies the grounds therefor as "insufficiency of the evidence to sustain the findings and judgment, and for error of law", respondent makes no attempt in its brief either to point out such error of law or to show in what particulars the evidence is insufficient. However, respondent urges that appellant's abandonment of the contract is established by her uncontradicted testimony to the effect that she began work in July, 1936, for Twentieth Century-Fox Film Corporation on the picture entitled "Ladies in Love", thereby relieving respondent from giving the notice of August 1, 1936, provided by the terms of the contract herein. Also, that appellant has failed to state a cause of action in her complaint because of her failure to allege that "she performed or that she tendered performance, or that defendant prevented performance or that performance was excused, of performing her obligations under the contract."

It therefore appears from the state of the record that it is incumbent upon this court to decide as a matter of law whether the evidence which is uncontradicted is sufficient to sustain the judgment in favor of appellant.

Quoting from the opinion in the case of *Moss* v. *Stubbs*, 111 Cal. App. 359, at 362 [295 Pac. 572, 296 Pac. 86] : "The well-settled rule is that the matter of granting or refusal to grant a motion for a new trial is largely within the

discretion of the trial court (*Work* v. *Whittington,* 61 Cal. App. 302 [214 Pac. 474]); that in passing upon such motion the trial court is not bound by the rule of conflicting evidence as is the appellate tribunal (*Huckaby* v. *Northam,* 68 Cal. App. 83 [228 Pac. 717]; *Smith* v. *Royer,* 181 Cal. 165 [183 Pac. 660]); but must weigh and consider the evidence for both parties and determine for itself the just conclusion to be drawn from it (*Green* v. *Soule,* 145 Cal. 96 [78 Pac. 337]; *Rudin* v. *Luman,* 53 Cal. App. 212 [199 Pac. 874]); and if it is satisfied that the finding of the jury is contrary to the weight of the evidence it may grant a new trial (*Gordon* v. *Roberts,* 162 Cal. 506 [123 Pac. 288]). Even when the evidence is not conflicting and all the proof seems to be favorable to one or the other of the parties litigant, the question of the probative force or the evidentiary value of the testimony is nevertheless within the determination of the trial court in a proceeding on motion for a new trial. (*Otten* v. *Spreckels,* 24 Cal. App. 251 [141 Pac. 224]; *Roberts* v. *Southern Pac. Co.,* 54 Cal. App. 315 [201 Pac. 958].) ▉ But it is equally well settled that where there is no substantial conflict in the testimony on material issues, and the evidence as a whole would be insufficient as a matter of law to support a verdict in favor of the moving party, an order granting a new trial cannot be sustained. (*Springer* v. *Pacific Fruit Exchange,* 92 Cal. App. 732 [268 Pac. 951]; *Wendling Lbr. Co.* v. *Glenwood Lbr. Co.,* 153 Cal. 411 [95 Pac. 1029]; *Empire Inv. Co.* v. *Mort,* 169 Cal. 732 [147 Pac. 960]; *Harvey* v. *Machtig,* 73 Cal. App. 667 [239 Pac. 78, 82].) As will hereinafter appear, there is no substantial conflict in the evidence as to any of the essential facts . . . and the determinative question presented with reference to the evidence is, therefore, whether as a whole it would be sufficient as a matter of law to support verdicts in favor of (the moving parties) in the event that such verdicts had been found.'' It was held in the cited case that the evidence was wholly insufficient as a matter of law to support verdicts in favor of the moving parties, and the order granting a new trial was reversed, the court commenting as follows at page 371: ''As was said by the court in *Harvey* v. *Machtig, supra,* in directing a reversal: 'We are not unmindful of the reluctance with which appellate courts reverse orders granting or refusing new trials, nor of the rule that a trial court in passing upon such a motion is not bound

by the findings of the jury, if there is sufficient evidence to sustain a contrary finding. (*Huckaby* v. *Northam*, 68 Cal. App. 83 [228 Pac. 717].) Where, as here, however, there is no evidence upon which a contrary finding could be founded, the order granting a new trial cannot be sustained upon appeal.''

The rule enunciated in the case of *Moss* v. *Stubbs, supra,* was followed in *Seth* v. *Lew Hing,* 125 Cal. App. 729, 732 [14 Pac. (2d) 537, 15 Pac. (2d) 190], the court citing as additional authorities to the same effect: *Hitchcock* v. *Rooney,* 171 Cal. 285, 288 [152 Pac. 913]; *Estate of Baird,* 198 Cal. 490, 507 [246 Pac. 324]; *Vertson* v. *City of Los Angeles,* 116 Cal. App. 114 [2 Pac. (2d) 411]. See, also, *Henderson* v. *Braden,* 35 Cal. App. (2d) 88, 91 [94 Pac. (2d) 625].

Stripped of all unnecessary detail, the cause of action herein is one for breach of contract on the part of respondent resulting from its failure to perform a condition precedent, i. e., the giving of notice to appellant on or before August 1, 1936, as to the starting date of the second picture. (See sec. 1436, Civ. Code.) Respondent cannot excuse its failure in this regard by asserting that because appellant was engaged in making a photoplay for Twentieth Century-Fox Film Corporation from July 13 to August 22, 1936, she thereby put it out of her power to perform her obligations under the contract. She alleges in her complaint that she was at all times ready, able and willing to perform, and for all that appears in the record, she had received notice on August 1st that respondent expected her arrival in England on September 1st to start work on ''The Hawk'', she would have been present at the time and place fixed in said notice. The evidence negatives any idea of abandonment of the contract by appellant.

Moreover, it should not be overlooked that respondent unsuccessfully sought from appellant a cancellation of the contract early in the spring of 1936, at which time it apparently considered the contract in full force and effect, therefore, before it could place appellant in default it was necessary for respondent to give notice as provided in said contract. (See sec. 1439, Civ. Code.)

It is well recognized that a failure to comply with conditions precedent not only will prevent an action by the defaulting party to enforce the contract, but also will sustain an action by the other party for a breach thereof. (6 Cal.

Jur. 400, and authorities there cited, including *Rosenberg* v. *Geo. A. Moore & Co.*, 203 Cal. 211 [263 Pac. 806].)

■ A review of the entire record reveals that there is no conflict in the testimony on the material issues, and that the evidence as a whole would be insufficient as a matter of law to support a judgment in favor of respondent. Consequently, it was error amounting to an abuse of discretion to grant respondent's motion for a new trial.

■ Passing to the appeal from the judgment which limits the amount of appellant's recovery to $31,000 by deducting from the $35,000 guaranteed under the contract the sum of $4,000 received by appellant for her services in radio broadcasts during the month of September, 1936, it is well settled that " 'The measure of recovery by a wrongfully discharged employee is generally and primarily . . . the agreed wage for the unexpired part of the term, and the burden is upon the employer to rebut this presumption by proof that the damages sustained were actually less.' (*Gregg* v. *McDonald*, 73 Cal. App. 748, 757 [239 Pac. 373]. . . . ) 'The measure of damages in such cases is the amount of salary agreed upon for the entire period of service, less the amount which the servant has earned or with reasonable effort might have earned from other employment.' (*Boardman Co.* v. *Petch*, 186 Cal. 476, 484 [199 Pac. 1047]. . . . ; *Seymour* v. *Oelrichs*, 156 Cal. 782, 801 [106 Pac. 88, 97, 134 Am. St. Rep. 154].)" (*Goudal* v. *C. B. DeMille Pictures Corp.*, 118 Cal. App. 407, 414 [5 Pac. (2d) 432, 7 Pac. (2d) 174].)

The "other employment" which the discharged employee is bound to seek is employment of a character substantially similar to that of which he has been deprived; he need not enter upon service of a different or inferior kind, in order to mitigate the damages. (18 R. C. L. 529; 28 A. L. R. 737.)

Appellant calls attention to the case of *Payne* v. *Pathe Studios, Inc.*, 6 Cal. App. (2d) 136 [44 Pac. (2d) 598], which, instead of being an action for breach of contract, was based upon the failure of respondent to pay the minimum compensation specified in an agreement very similar to the one here involved. In the cited case it was held that there was no obligation to mitigate the damages sustained, the court stating at page 142: "Here again we must bear in mind that this is not an action for damages for breach of the contract of employment, but an action on the contract itself for the

agreed compensation. The doctrine of mitigation of damages has no place in such an action.''

Therefore, we must hold that it was proper to offset against the amount guaranteed under the contract the $4,000 received by appellant in radio engagements, because while such work might be denominated different in character from that required of a moving picture actress, it cannot be said to be inferior thereto.

With respect to respondent's point that appellant has failed to state a cause of action in her complaint because of failure to allege performance or a tender of performance, the trial court passed upon the sufficiency of the complaint at the time of the hearing on the demurrer interposed by the defendants herein. Moreover, appellant was never in default under the contract, and therefore was not required to tender performance before suing for breach thereof. It was enough for her to allege that she was ready, able and willing to perform her obligations under the contract, but that respondent had failed to fix the time and place for such performance.

The order granting respondent's motion for a new trial is reversed, and the original judgment herein is affirmed.

Doran, J., and White, J., concurred.

A petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on August 8, 1940.