[Civ. No. 15574. Second Dist., Div. One. Apr. 1, 1947.]

JOE PIRRONE, Appellant, v. MARY NUCCIO et al., Defendants; DORA B. HOXIE, Respondent.

John J. Craig for Appellant.

Sidney A. Moss for Respondent.

YORK, P. J.—The instant action is for the recovery of damages on account of injuries to person and property alleged to have been sustained by the plaintiff.

It is alleged in the complaint that beginning on May 1, 1944, plaintiff operated a cafe on the ground floor of a four-story brick building in Los Angeles owned by defendant Mary Nuccio; that defendant Hoxie operated a hotel on the upper floors of said building; that the portion of the second floor directly over the premises occupied by the plaintiff consisted of hotel rooms, a bathroom and toilet facilities; that on and prior to July 22, 1944, the defendants "maintained, operated and repaired" the premises over and above the ground floor of said building in such a negligent, careless and reckless manner that as a direct and proximate result thereof "a great mass of water, plaster and rubble fell with great force upon the plaintiff and upon his steam table where was located his prepared food, and upon various other stock and equipment," whereby he sustained grave personal injuries, suffered loss of trade and damage to clothing, food and equipment.

During the course of the trial a motion for judgment of nonsuit as to defendant Mary Nuccio was granted. At the conclusion of the trial defendant Hoxie's motion for a directed verdict, on the ground that the evidence failed to show any negligence on her part, was denied. The jury returned a verdict against defendant Hoxie assessing the damages sustained by plaintiff at $1,000, and judgment thereon was duly entered. Thereafter, on motion of defendant Hoxie, the trial court entered its order granting a new trial on the ground that the "evidence is insufficient to sustain the verdict and the same is against law."

This appeal from such order is prosecuted by plaintiff.

Appellant specifies abuse of discretion on the part of the trial court in granting a motion for a new trial because the evidence "clearly establishes a case for plaintiff . . .

"1. Upon the theory of *res ipsa loquitur*.

"2. Upon the theory that the defendant, having knowledge that water was leaking into the restaurant of the plaintiff, negligently failed to take steps to remedy same."

Respondent Hoxie, who was called as a witness by appellant under section 2055 of the Code of Civil Procedure, testified that she operated a hotel in the building in question and employed Carrie Wallace as manager; that her husband Will Wallace assisted her; that "if something was out of order and I was not there, she (Mrs. Wallace) had the right to call a plumber"; that as a rule, she (Mrs. Hoxie) checked the hotel every day, but occasionally missed a day; that she "would check the hotel through to see that everything was in order and take care of all the outside matters pertaining to the operation of the hotel." Further, that she learned of the accident the day after it occurred; that the difficulty arose in connection with "a bathroom on the first floor of the hotel which was stopped up, the drain was stopped up"; that this bathroom was the only one for the fifteen rooms on the first floor of the hotel; that the toilet facilities were in separate rooms "the bathroom to the left and the toilet to the right and the washroom across from that."

Mr. Wallace, one of the managers of the hotel, testified that sometime in the morning of July 22, 1944, the day on which the accident occurred, he investigated a report made by a guest and found that the bathtub in the bathroom on the first floor was stopped up; that there was about two gallons of water in the tub and no water on the floor; that he was told that "they had already made a telephone call for a plumber," who came the next day; that the plumber "told me that some debris had gotten down inside the drain and stopped it up. Q. Was that before this accident was reported to you? A. Yes, sir. . . . Q. Did you see him fix that before this accident? A. Well, I saw him working there and he told me what it was and he was working on it, and I suppose he fixed it, I don't know; I left him there working." This witness also testified, on cross-examination, that after he called the plumber, he reported the matter to Mrs. Nuccio, to wit: "the next day I went down and saw her and told her that we would have to have a plumber because the bathtub was stopped up and we couldn't get it to run, and of course it cost us eighteen or twenty dollars every time she called one and the next day when Mrs. Hoxie saw me I told her about the con-

dition of the bathroom, what it was, and that it was stopped up, and she said and I knew that it cost eighteen or twenty dollars every time we called the plumber in but she said we would have to get him in, so he did come in that very day. . . . Q. By Mr. Craig: Do you know whether or not water ran into Mr. Pirrone's restaurant? . . . A. No, sir, not at that time I didn't. . . . Q. By Mr. Craig: Is that the first time the bathtub was filled up or ran over or was plugged up? . . . A. By the Witness: You mean was it stopped up before this one occasion? Q. By Mr. Craig: Yes, that is right. A. One time. Q. When was that? A. I don't remember. . . . Q. By Mr. Craig: Well, did Mr. Lopez tell you at any time prior to the 22nd of July that water was coming through the ceiling into the Pirrone restaurant? . . . A. One time, yes. . . . Q. And at that time did you go in and look to see if the water was coming from the bathroom, or was it water coming from there? A. Not the bathroom. Q. Where was it then? . . . A. The toilet room. . . . Q. Did that toilet overflow at any time to your knowledge? . . . A. Yes, several times. . . . Q. By Mr. Craig: But whenever the toilet, or whether it was the bathroom that overflowed, or if it was the bathroom or the toilet, you always called a plumber? A. Yes.''

Louis Lopez, an employee of appellant, testified that he was working in the cafe on July 22, 1944; that about ten days before that he noticed on three different occasions spots on the ceiling, like water leaking; that occasionally water stood on the floor of the cafe when he was mopping; that he went upstairs and reported the matter to the Wallaces, ''I just mentioned that it was leaking, probably from the bathroom, sometimes it was leaking, I didn't know what it was.'' This witness further testified that on July 22, 1944, he again noticed ''there was water on the ceiling, and the ceiling came falling down, you know, on top of everything.''

Appellant Pirrone testified that on July 22, 1944, ''about two minutes of twelve, right at the lunch hour, and I was just making change at the cash register . . . somebody said 'Look out,' and before I could even get away from there to do anything, why, . . . a lot of water, . . . just large pieces of plaster and things . . . plaster from the ceiling and water . . . came right down on everything and on me when I was standing there, right down on my head and it hit me on the head and all around me and came down all over the cash

register and all over the counter," injuring him and ruining the food in the steam table.

The doctor who attended appellant testified on cross-examination that he found "there was a subluxation of the cervical vertebra, resulting in a restriction of motion"; that subluxation "is the malposition of the vertebra, it is not strictly a dislocation but it is a condition where the vertebra has received such an injury that there is a limitation of motion under the normal motion and then there is an inclination for it not to go back to its normal and ordinary position when forcibly moved."

It is established law that the matter of granting or refusing to grant a motion for a new trial is largely within the discretion of the trial court, and, as was stated in *de la Falaise* v. *Gaumont-British Picture Corp.*, 39 Cal.App.2d 461, 467 [103 P.2d 447], quoting from *Moss* v. *Stubbs*, 111 Cal. App. 359, 362 [295 P. 572, 296 P. 86] : " 'in passing upon such motion the trial court is not bound by the rule of conflicting evidence as is the appellate tribunal (*Huckaby* v. *Northam*, 68 Cal.App. 83 [228 P. 717] ; *Smith* v. *Royer*, 181 Cal. 165 [183 P. 660]) ; but must weigh and consider the evidence for both parties and determine for itself the just conclusion to be drawn from it (*Green* v. *Soule*, 145 Cal. 96 [78 P. 337] ; *Rudin* v. *Luman*, 53 Cal.App. 212 [199 P. 874]) ; and if it is satisfied that the finding of the jury is contrary to the weight of the evidence it may grant a new trial (*Gordon* v. *Roberts*, 162 Cal. 506 [123 P. 288]). Even when the evidence is not conflicting and all the proof seems to be favorable to one or the other of the parties litigant, the question of the probative force or the evidentiary value of the testimony is nevertheless within the determination of the trial court in a proceeding on motion for a new trial. (*Otten* v. *Spreckels*, 24 Cal.App. 251 [141 P. 224] ; *Roberts* v. *Southern Pac. Co.*, 54 Cal.App. 315 [201 P. 958].) But it is equally well settled that where there is no substantial conflict in the testimony on material issues, and the evidence as a whole would be insufficient as a matter of law to support a verdict in favor of the moving party, an order granting a new trial cannot be sustained. (*Springer* v. *Pacific Fruit Exchange*, 92 Cal.App. 732 [268 P. 951] ; *Wendling Lbr. Co.* v. *Glenwood Lbr. Co.*, 153 Cal. 411 [95 P. 1029] ; *Empire Inv. Co.* v. *Mort.*, 169 Cal. 732 [147 P. 960] ; *Harvey* v. *Machtig*, 73 Cal.App. 667 [239 P. 78, 82].) . . . there is no substantial conflict in the evi-

dence as to any of the essential facts . . . and the determinative question presented with reference to the evidence is, therefore, whether as a whole it would be sufficient as a matter of law to support verdicts in favor of (the moving parties) in the event that such verdicts had been found.' It was held in the cited case that the evidence was wholly insufficient as a matter of law to support verdicts in favor of the moving parties, and the order granting a new trial was reversed, the court commenting as follows, at page 371: 'As was said by the court in *Harvey* v. *Machtig, supra,* in directing a reversal: ''We are not unmindful of the reluctance with which appellate courts reverse orders granting or refusing new trials, nor of the rule that a trial court in passing upon such a motion is not bound by the findings of the jury, if there is sufficient evidence to sustain a contrary finding. (*Huckaby* v. *Northam,* 68 Cal.App. 83 [228 P. 717].) Where, as here, however, there is no evidence upon which a contrary finding could be founded, the order granting a new trial cannot be sustained upon appeal.'' '

''The rule enunciated in the case of *Moss* v. *Stubbs, supra,* was followed in *Seth* v. *Lew Hing,* 125 Cal.App. 729, 732 [14 P.2d 537, 15 P.2d 190], the court citing as additional authorities to the same effect: *Hitchcock* v. *Rooney,* 171 Cal. 285, 288 [152 P. 913] ; *Estate of Baird,* 198 Cal. 490, 507 [246 P. 324] ; *Vertson* v. *City of Los Angeles,* 116 Cal.App. 114 [2 P.2d 411]. See, also, *Henderson* v. *Braden,* 35 Cal.App.2d 88, 91 [94 P.2d 625].''

 There appears to be no conflict in either the factual situation or the evidence adduced at the trial herein, it being conclusively established that respondent through her agent Wallace had notice that there was a leakage of water either from the bathroom or from the toilet room into the ceiling of the restaurant during the ten-day period immediately preceding the deluge; and that while said Wallace investigated the complaint with respect to the stoppage of the bathtub drain and sent for a plumber, there is no indication that he inspected the toilet which had previously overflowed several times, or that he took any precaution to prevent another overflow from the same source. By her failure to use ordinary care in the inspection and repair of all toilet facilities provided for the occupants of the fifteen rooms on the second floor of the building directly over the premises occupied by

appellant, respondent was guilty of negligence proximately resulting in the injuries and damage complained of. Viewed in its entirety, the evidence adduced at the trial would be insufficient as a matter of law to support a verdict in favor of respondent, consequently, the order granting respondent's motion for a new trial cannot be sustained.

For the reasons stated, the order is reversed.

White, J., and Doran, J., concurred.