[Civ. Nos. 15221, 15401.   First Dist., Div. Two.   Mar. 20, 1953.]

ALEX HARRIS et al., Respondents, v. NATIONAL UNION OF MARINE COOKS AND STEWARDS, etc., et al., Appellants.

Gladstein, Andersen & Leonard for Appellants.

Ropers & Majeski, Robert J. Barbieri, Aaron Sapiro and G. C. Ringole for Respondents.

DOOLING, J.—The judgments here appealed from affect the same five plaintiffs who received the judgments affirmed by this court in *Harris* v. *National Union etc. Cooks & Stewards,* 98 Cal.App.2d 733 [221 P.2d 136]. On that appeal we affirmed a judgment granting a writ of mandate which ordered the restoration of these plaintiffs to membership in defendant union and awarded them damages for loss of wages caused by their illegal expulsion therefrom. In entering the former judgment the trial court retained jurisdiction pending the appeal for the purpose of awarding such additional damages as might be suffered by plaintiffs until they were

actually restored to the union. The present awards cover the period from September 30, 1948 to October 1, 1950 when plaintiffs were finally restored to their membership. For this period each plaintiff was given judgment for $5,000. The only questions presented on this appeal relate to the damages, since the right to such damages as plaintiffs properly proved are settled by the former appeal.

■ Much of the briefs is taken up with the duty of respondents to mitigate their damages. The extent of this duty in a case of this character is delimited in *Smetherham* v. *Laundry Workers' Union*, 44 Cal.App.2d 131, 139 [111 P.2d 948]: "It is a general rule that it is the duty of an employee who has been wrongfully discharged before his term of service has expired, to seek other employment, and thus diminish the damages sustained by him. (8 Cal.Jur. 787.) Apparently this rule applies where the employee sues a third party for wrongfully bringing about his discharge. (*Adams* v. *Cameron*, 27 Cal.App. 625 [150 P. 1005, 151 P. 286].) It is also a general rule that an employee who is wrongfully discharged is not obliged to seek or to accept other employment of a different or inferior kind, in order to mitigate damages. (Note to 28 A.L.R. 737; *Elbert* v. *Los Angeles Gas Co.*, 97 Cal. 244 [32 P. 9].)"

The problem presented to the trial court in the case of each of the five respondents was to determine: 1. If each respondent had not been prevented from obtaining employment with the shipping companies which employed its stewards through the appellant union, during how many months of the two-year period covered by the judgments might each respondent have actually been employed by such companies and what would his earnings have been from such anticipated employment? 2. Was comparable employment open to each respondent with other companies not under contract with appellant union? 3. If comparable employment was available did each respondent make a reasonable effort to secure such employment or was there some reasonable ground for his not doing so? 4. If any respondent failed to make a reasonable effort to mitigate his damages by how much would the damages have been reduced if he had made such effort?

■ It is obvious that these questions are fraught with uncertainty, an uncertainty which fathers the rule quoted by us on the previous appeal in this case from *Zinn* v. *Ex-Cell-O Corp.*, 24 Cal.2d 290, 297-298 [149 P.2d 177]: "One whose wrongful conduct has rendered difficult the ascertainment

of the damages cannot escape liability because the damages could not be measured with exactness.'' (*Harris* v. *National Union etc. Cooks & Stewards, supra,* 98 Cal.App.2d p. 738.)

The appellants proved that through the Sailors Union of the Pacific there were opportunities for some employment as stewards principally on tankers and that there were a few such opportunities on a limited number of other vessels. They also proved that due to a shortage of positions men in the classification of respondents normally worked about three-quarters of the year. A witness Turner, called by respondents, who was familiar with the working conditions in the field testified at length to what the respondents Harris, Kaplan and Handelsman would have earned during the two-year period in question if they had not been deprived of their opportunity to work for the companies supplied by appellant union. Without breaking down his figures they ran close to $20,000 for the two-year period. With these general facts in mind we approach each individual case.

### The Harris Evidence

Harris testified that while he was a member of the Sailors Union of the Pacific and could have had work as a steward on tankers he did not accept it because he suffered from catarrh and the fumes on tankers aggravated this condition. On cross-examination he gave some answers which tended to weaken this testimony but its weight in view of these later answers was for the trial court to determine. Evidence tending to support Harris' testimony of the bad effect of the fumes on tankers upon his respiratory condition is the fact that he went to New Orleans during this period and shipped out from there on three voyages in another type of vessel for a period aggregating 171 days. A man who does not want to work at his profession would clearly not go to so much trouble to obtain such work. Harris also engaged in some employment on shore. It is argued that he testified that he was working day and night during this period on his controversy with the union, but he also testified that he was seeking employment day and night. We cannot say that taking all the factors into consideration an award of $5,000, $2,500 per year, is not supported by the evidence. The evidence most favorable to Harris would have supported a much larger amount.

### The Kaplan Evidence

Kaplan testified that he could not get employment on tankers because of the ill feeling toward him of one of the offi-

cers of the Sailors Union of the Pacific. He sought work unsuccessfully through all of the seafaring unions. He worked on shore during this period as a pile butt, laborer, timekeeper, carpenter, porter and ditch-digger. The court could find that Kaplan made every reasonable effort, and in taking the menial positions that he did went far beyond the efforts required by the law, to mitigate his damages. The award to him might under the evidence most favorable to his case have been much larger.

It developed that in securing a gun permit Kaplan's occupation had been stated as "labor relations." Cross-examination developed that the person taking the application suggested the term because of Kaplan's activities in union matters. He testified "I never drew no money as a labor relations man . . . I never earned no money from it." There was no error in the court's limiting further cross-examination on this subject. It had already been developed that he devoted a great deal of his unemployed time to his dispute with the respondent union and that was the sum of his "labor relations."

### The Handelsman Evidence

Handelsman did seek employment on tankers and did in fact receive some employment thereon. He also sought work in many hotels and restaurants without success. He was incapacitated part of the time. The court was entitled to weigh all the factors and we cannot say that the award made was not amply supported.

### The McCourt Evidence

McCourt was 72 years old. Because of his age he could only expect work with a company which had previously employed him. He could not get work on tankers because of his age, nor elsewhere although he tried everywhere. He had been steadily employed while he was a member of the respondent union. Again we can only hold the award supported by substantial evidence.

### The Antons Evidence

Antons worked as a port steward with the Grace Line from December, 1948, to October, 1949, when he was laid off on account of a reorganization of the staff. He later worked six months on the S. S. Cache. He made unsuccessful efforts to secure other employment. His age prohibited his employment on tankers and on Military Service Transportation. His good faith efforts to secure employment and the amount of

his damages were for the trial court and the modest award is supported by the evidence.

The fact that the awards were the same in each case does not compel us to find that they were arbitrary. We are only concerned on appeal to find sufficient in the evidence to support each award.

Appellants complain of the refusal of the trial court to permit the introduction of evidence covered by several offers of proof. The first offer was in connection with the cross-examination of Kaplan and has already been disposed of. The second offer was to show that from 1941 to 1944 the union had 15,000 members and controlled 1,200 vessels. This was to be compared with 5,400 members and 200 vessels in the period 1948-1950. The latter was proved as was also the percentage of time actually worked by each member during 1948-1950. The trial court committed no abuse of discretion in ruling that evidence for the period 1941-1944 was too remote. (*Guardianship of Jones,* 86 Cal.App.2d 35, 38 [194 P.2d 141] and cases there cited.)

The court properly sustained an objection to the offer to prove a custom of chief stewards to ship in lower ranks when work as chief steward was not available. The duty of mitigation of damages as stated in the Smetherham case, *supra,* 44 Cal.App.2d p. 139 does not require the plaintiff "to seek or to accept other employment of a different or inferior kind."

The final offer of proof was that the Sailors Union of the Pacific was shipping two cooks on each vessel. The respondents were chief stewards and not required to ship as cooks.

Appellants also complain of certain conduct of the trial judge. We find no prejudice in his conduct of the case.

Respondents Harris, Kaplan and Handelsman ask us to reverse the judgments as to them as inadequate but without taking an appeal they are in no position to ask for such relief. (*Salter* v. *Ulrich,* 22 Cal.2d 263, 268 [138 P.2d 7, 146 A.L.R. 1344].)

Judgments affirmed.

Nourse, P. J., and Goodell, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied May 14, 1953. Schauer, J., was of the opinion that the petition should be granted.