[Civ. No. 10539. Third Dist. Nov. 1, 1963.]

GLORIA KAST, Plaintiff and Appellant, v. BOARD OF TRUSTEES OF AMERICAN RIVER JUNIOR COLLEGE DISTRICT et al., Defendants and Appellants.

Johnson & Stanton, Gardiner Johnson and Thomas E. Stanton, Jr., for Plaintiff and Appellant.

John B. Heinrich, County Counsel, and Richard H. Perry for Defendants and Appellants.

VAN DYKE, J.*—Gloria Kast brought this proceeding in mandamus to secure reinstatement to her position as a permanent employee of the appellant American River Junior College District, from which position she alleged she had been wrongfully dismissed at the end of the school year 1958-1959, and from which, as she further alleged, she had been wrongfully barred during the school years 1959-1960 and 1960-1961.

The trial court determined that respondent Kast was a permanent employee of the appellant district, had been wrongfully discharged, and directed that she be reinstated. The court further directed that she be paid an annual salary for the school year 1959-1960, less deductions for salary earned by her in other employment, commensurate with the salary she would have received had she advanced one step on the district's salary schedule, and denied her any further advancement on the salary schedule on the ground that she had not performed services for the district during the school years 1959-1960 and 1960-1961 and therefore could not be given efficiency ratings for those years. The court directed that her annual salary for the school years 1960-1961 and 1961-1962 be identical with her salary for the school year 1959-1960.

The district has appealed from the judgment insofar as it directed that respondent be reinstated and that she advance one step on the salary schedule for the school year 1959-1960 and be paid commensurately. Respondent Kast has cross-appealed from that portion of the judgment which denied her advancement on the salary schedule for the school years 1960-1961 and 1961-1962 with commensurate pay. Notwithstanding the cross-appeal, we shall hereafter refer to Gloria Kast as "respondent" and to the Board of Trustees of American River Junior College District and others as "appellants."

The following facts were pleaded in the petition for writ of mandate and were not denied.

Grant Union High School District, hereinafter called "Grant," at all times has had an average daily attendance, referred to as "A.D.A.," of more than 850. For a number of years prior to the occurrences which preceded and led to this litigation and July 1, 1955, Grant maintained a junior college. Respondent had been employed by Grant, commencing February 1, 1954, as a full-time instructor in said junior college which is a position requiring certification, the period

---

*Retired Presiding Justice of the District Court of Appeal sitting pro tempore under assignment by the Chairman of the Judicial Council.

of her contract being from said date until June 30, 1954. She was thereafter employed by Grant for a complete school year, 1954-1955. Effective July 1, 1955, Grant was included within appellant junior college district which thereupon took over and maintained the junior college theretofore maintained by Grant. (It was shown factually, without dispute, that appellant district, for this purpose, leased from Grant the area, buildings and plant used by Grant for its junior college classes.) Appellant district employed respondent Kast for the school year 1955-1956 in the same position (i.e., full-time instructor, a position requiring certification), and thereafter it employed her in said position for three complete consecutive school years, that is, 1956-1957, 1957-1958, 1958-1959. At all time here material respondent Kast has held a valid and proper certification document. Appellant district did not have an A.D.A. of 850 or more during its first year, i.e., 1956-1957. Thereafter, and during all times material here, it had an A.D.A. in excess of that figure.

On or about May 13, 1959, petitioner was notified by letter that her services would not be required for the school year 1959-1960, notwithstanding which she refused acquiescense, presented herself and tendered performance of services at the commencement of the school year, and was refused employment. No contention is made that if she were at that time a permanent employee of appellant district under tenure laws, the conduct of appellant district was not violative of her rights.

We may say here that respondent contends this court's decision in the case of *Flewelling* v. *Board of Trustees of American River Junior College Dist.*, 178 Cal.App.2d 168 [2 Cal.Rptr. 891], constitutes compelling authority upon the issue of tenure in this case. On the contrary, appellants contend that on the issue of tenure the decision of this court in *Flewelling* constituted mere obiter dicta. *Flewelling* arose out of the same procedures present here, resulting in the formation of appellant district and its takeover of the junior college theretofore maintained by Grant. Flewelling there, as Kast here, had been an employee of Grant, teaching as an instructor in the junior college. His employment by appellant district, according to the provisions of his contract, was as a probationer, and appellant district discharged him at the end of three years. Flewelling brought mandate proceedings to compel his reinstatement, contending that he had achieved permanent tenure. The decision of the trial court and of this

court on the issue of tenure was in Flewelling's favor, and herein respondent Kast relies, in part, upon that decision as upholding the decision of the trial court in this case, declaring that she also achieved tenure and became. a permanent employee of appellant district. The contentions of appellants that this court's ruling in *Flewelling* constituted dicta only has caused us to reexamine the record in *Flewelling* with that contention in view. After that examination, we are not at all convinced that the claim of dicta is correct. We have concluded, however, to reexamine the pertinent legislation, assuming that the charge of dicta is correct.

■■ When employed by appellant district respondent Kast had been a probationary employee of Grant for one and one-half years. Regarding the achievement of tenure, therefore, she could only be employed by appellant in a probationary status. If, however, and notwithstanding the A.D.A. of appellant district, she could tack to her service to that. district the the time spent as a probationary employee of Grant and could count toward tenure the first year's service with appellant district, then after serving with appellant district two years and being reemployed for the following year she was reemployed as a tenured teacher. If she were unable to count that first year toward tenure, then at the end of her employment with appellant district it was optional with the district whether it would reemploy her for another year, and the district was within its rights in refusing such further employment. Respondent relies on the provisions of section 13321 of the Education Code of this state as giving her tenure. This section was formerly numbered 13093, but we shall refer to it hereafter by its present section number. The section provides, in pertinent part, and at all times here material did provide, as follows:

"The division, uniting, unionization, unification, or consolidation of any school district or districts, or any change in school district boundaries or organization, shall not affect the classification of certificated employees already employed by any school district affected. Such employees shall have the same status with respect to their classification by the district, including time served as probationary employees of the district after the division, uniting, unionization, unification, or consolidation, or change in school district boundaries or organization as they had prior thereto. If such division, uniting, unionization, unification, or consolidation, or change in school district boundaries or organization results in the school or other place in which any such employee is employed

being maintained by another district, any such employee, if a permanent employee of the district which formerly maintained such school or place of employment, shall be employed as a permanent employee of the district which thereafter maintains the school or other place of employment, unless such employee elects to continue in the employ of the first district. If such employee is a probationary employee of the district which formerly maintained such school or other place of employment, he may be employed by the district which thereafter maintains the school or other place of employment, and, if so employed, his status with respect to classification by such district shall be the same as it would have been had the school or other place of employment continued to be maintained by the district which formerly maintained it.''

So stood the section when, on May 25, 1955, the Governor approved legislation purporting to amend it. (Stats. 1955, ch. 726, p. 1219.) The Legislature added to the portion of the section quoted the following: ''As used in the preceding paragraph of this section 'any change in school district boundaries or organization' includes, but is not limited to, the formation of a junior college district which includes a high school district maintaining a junior college.''

The enactment was declared to be emergency legislation to go into effect immediately because, said the Legislature, ''It is not clear ... whether this section is applicable in those instances in which a new junior college district is formed [as was appellant here] to include a high school district maintaining a junior college. In order that the governing boards of newly formed junior college districts may know the status of certificated employees of high school districts who were classified as probationary or permanent employees while serving in the junior college of such district at the earliest possible moment, it is essential that this act take effect immediately.''

It is to be noted that the amendatory legislation we have quoted squarely fits the situation presented by the facts here involved, to this extent, the formation of appellant district, the takeover by that district when formed of the junior college work theretofore given by Grant, and the concurrent abandonment by Grant of junior college work.

This court in *Flewelling,* responsive to the contention of appellant there that the legislation could not be emergency legislation by reason of its nature, gave to the legislation no greater effect than matter which might be considered by the court in interpreting the section as it stood before the so-

called emergency legislation was passed. This court, therefore, construing the section as applying to the situation presented there said at page 173:

"Turning now to section 13093 [13321] as it existed before the clarifying act was passed, we think it upholds the judgment appealed from. The language of the section pertinent here is that which declares that '... any change in school district boundaries or organization, shall not affect the classification of certificated employees already employed by any school district affected ...' and that '... if such change in school district.... organization results in the school ... in which any such employee is employed being maintained by another district, ... if such employee is a probationary employee of the district which formerly maintained such school ... he may be employed by the district which thereafter maintains the school ... and if so employed, his status with respect to classification by such district shall be the same as it would have been had the school continued to be maintained by the district which formerly maintained it.' The word 'school' as here used clearly applies to the junior college being maintained by the Grant Union High School in which respondent was teaching when the change in school organization placed the school work so being done within the jurisdiction of the newly-organized American River Junior College District. This construction harmonizes with the legislative construction found in the clarifying act and with the underlying policy of the section which is to prevent changes in school districts and school organizations from adversely affecting the achievement by teachers of permanent status as authorized and encouraged by the tenure laws."

After further study we see no reason to depart from the language in *Flewelling* which we have quoted or to change the interpretation of the pertinent code section from that made by this court in *Flewelling*, whether that determination constituted dicta or not. It is worthy of note that, confronted by the legislation we have discussed and as provided by its terms, appellant district was not obliged to employ respondent here but equally was advised that if it did, then "if so employed, his [her] status with respect to classification" should be "the same as it would have been had the school continued to be maintained by the district which formerly maintained it."

As appellant district states in its brief on appeal, tenure is not a constitutionally vested right but is within the plenary power of the Legislature. (Citing *Taylor* v. *Board of*

*Education,* 31 Cal.App.2d 734 [89 P.2d 148].) Appellant district, by what it did, placed itself squarely within the specific language of section 13321. Grant had been maintaining a school, a junior college, at a place which was respondent's place of employment by Grant. Appellant district took over and maintained this school and the same place of employment. It employed respondent to teach in that school at that place. This employment endured through two full school years. When she was employed for the third year by appellant district, she became a permanent employee. Her discharge was unlawful and she was entitled to reinstatement. And this is so, notwithstanding the A.D.A. of appellant district during the first year of its employment of respondent was less than 850. Grant's A.D.A. was above that figure; had Grant maintained the college she would have attained tenure. To deny her tenure would be to go *contra* to the specific language of section 13321. This cannot be done.

 We turn now to the matter of salary adjustments. Respondent's salary at the close of the school year 1958-1959 was at the annual rate of $6,460. Appellants contend that it should have remained at that figure. The district through its board of trustees had in force, at all times material here, a salary schedule whereunder teachers were classified and graded for the purpose of fixing salaries. For the school year 1958-1959 respondent had been placed in Class II on step 9 of the salary schedule. The court determined that under the rules and regulations of the board, and in compliance with the provisions of the salary schedule, she was entitled to be placed for the next school year in Class II on step 10 and entitled to receive the salary paid to teachers in that classification, which salaries were at the rate of $7,280. The awarding of increases was made contingent upon satisfactory service and this was determined in the following manner: A teacher's service was deemed satisfactory when less than two unsatisfactory evaluation reports were submitted by the administrators assigned to evaluate a given teacher's work, and this evaluation was based upon the teacher's work during the past year. The trial court found:

"The evaluation made of petitioner's services for the school year 1958-1959 was not such as to establish such services as 'unsatisfactory' for that school year in comparison with the services of other similar permanent employees of respondent junior college district."

The court concluded that "Petitioner is entitled to be paid

for the school year 1959-1960 the annual salary fixed by the salary schedule of respondent junior college district for that school year for instructors in Class II on Step 10 of such schedule, namely, an annual salary of $7,280.''

Appellants attack the factual finding upon the ground that the evidence was insufficient to support it, contending that by what was done in the way of evaluation of service respondent had received more than one report that her service had been unsatisfactory. The trial court held that upon the record before it these evaluations had not been made nor acted upon from the standpoint of whether or not respondent was to receive an increase of salary by a progression from Class II, step 9, to Class II, step 10. The court considered that the evaluations were made, reported and passed upon by the board to determine the issue of whether or not respondent should be employed as a tenure teacher for the ensuing year, it being the board's contention throughout that she had not attained tenure and would not attain tenure unless so reemployed. So holding, the court considered that she had not received unsatisfactory ratings respecting her right to advancement, and, therefore, under the principle of uniformity and by virtue of the board rules she was entitled to be placed in the number of those permanent employees who, not having received two unsatisfactory reports, were entitled to advance. Said the court in an opinion filed in the cause:

''Respondents argue that her services *were* evaluated and that she was given a rating of 'unsatisfactory' for that year. Admitting that such evaluation was for the purpose of determining whether she should be retained in employment and thus automatically progress from a supposed probationary status to permanent tenure, they assert that the factors of evaluation are precisely the same and therefore should be considered as final in fixing the salary which Petitioner is entitled to receive for the school year 1959-1960.

''While both Dr. Priest and Mr. Boettcher testified that the factors of evaluation were the same, an analysis of their testimony demonstrates, I think, that this is not an accurate statement. As Petitioner's post-hearing brief (p. 2) asserts:

'' 'An evaluation for tenure purposes is an evaluation of the *teacher*, based on observations made and impressions gained throughout the probationary period.... The teacher's actual performance of her services is an important factor in the evaluation but it is not the *only* factor nor necessarily the controlling factor. Such performance may be equal to or even better than the performance of other teachers with

like training and years of service, but if the administration and ultimately the district board determine in good faith that, in their judgment, the teacher has traits of character which might *possibly* make her uncooperative or overly independent if granted tenure to the detriment of the school and its pupils, the board is authorized to deny tenure and its action in so doing is not subject to review by the courts.

"The accuracy of this statement is illustrated by the following quoted from the testimony of Dr. Priest:

" 'It is my best professional judgment that Mrs. Kast would function less effectively as a tenure teacher than she has done as a probationary teacher. This is based upon the projection of certain personality traits which I believe would be unfettered if tenure were offered. If this analysis is accurate the school would not profit by having her as a permanent staff member. I would submit that it is entirely consistent for a given person in a given circumstance to have met an average level in a number of classifications with an over-all evaluation of below average as a good risk for the district to give tenure. This seems to me, very obvious, and no inconsistency exists.' "

A review of the record indicates that so far as the board of trustees was concerned it gave no consideration to and took no action concerning respondent's salary status for the ensuing year, but, on the contrary, both consideration and action were concerned with the question as to whether or not they would reemploy respondent for an additional year and thus, in their view, grant tenure. Dr. Priest had been president of the American River Junior College since its establishment and was the superintendent of the district at all times pertinent here. There is much in the record showing that the evaluators were concerned mainly with the question of tenure, and from the whole record the court could conclude, as it did, that respecting advance in classification and salaries the reports were not made or intended to be used, or used, for the purpose of determining such an issue but were directed, made up, and used to determine the matter of tenure. For instance, although the evaluators, or at least some of them, recommended against tenure, they were fulsome in their praise of respondent aside from that issue of tenure. Thus, her immediate superior wrote a letter of recommendation in May 1961 stating:

"Mrs. Kast has vast and varied library experience, but the performance with which I am most familiar is at American

River Junior College. Our new library, which is a model for all new junior colleges, is solely her product from original design to complete operation. Function and beauty are presented in a rare combination. Mrs. Kast is personally most charming, and, in addition, has been outstanding in her leadership in California libraries and library organizations.

"I am confident that Mrs. Kast would be a great success in any library position, and recommend her without qualification."

Mrs. Kast was the librarian of the junior college. The trial court on the general subject of respondent's work during employment by appellant district found: "For each such school year [1955-1956 through 1958-1959] her progression on the salary schedule was identical with the progression of other instructors whose services had been rated satisfactory by respondents, and she was in fact paid the annual salary provided for instructors in the class and step on which she was placed."

Without going further we hold the record supports the findings of the trial court as to the nature, purpose and use of the evaluations.

The court correctly concluded that respondent had not received unsatisfactory evaluations and therefore under the board's rules was automatically entitled to the increase in classification and salary.

Appellants further contend that even if the foregoing be correct, nevertheless it was beyond the proper action of the trial court to affirmatively award salary based upon such findings and conclusions; that the court should and could go no further than to determine that respondent was entitled to reinstatement at the salary she was being paid when employment was denied her and then remand the cause to the appellant district's board of trustees for further action as an administrative agency having charge of that matter. However, we think the trial court's action was warranted by the factual situation presented to it.

In *Fry* v. *Board of Education*, 17 Cal.2d 753 [112 P.2d 229], there was involved the enforcement of the principle of uniformity of treatment for salary purposes upon a district having a salary schedule, and in that case the court affirmed the judgment, directing that teachers be given higher classifications and ratings on the salary schedule. Likewise, in *Aebli* v. *Board of Education*, 62 Cal.App.2d 706, 758 [145 P.2d 601], there was involved the enforcement of the same princi-

ple under the same circumstances, and therein the court likewise directed that such a judgment be entered. ▮ Under the familiar doctrine of the exhaustion of administrative remedies as a condition precedent to court action, it would generally be true that in matters as to the salaries of teachers, and the like, the doctrine would have full application. But courts in cases such as this are enforcing contract rights under a law which provides that nothing in the specific sections of the Education Code authorizing district boards to fix the compensation of teachers "shall be construed in such manner as to deprive any person of his rights and remedies in a court of competent jurisdiction on a question of law and fact." (Ed. Code, § 13267.) This provision has been in the Education Code for a long time and has on various occasions received the attention of courts in matters wherein it had been claimed that the action of boards of trustees must be held to be conclusive if sustained by substantial evidence. (See *Saxton* v. *Board of Education* (1929) 206 Cal. 758, 763 [276 P. 998]; *Moody* v. *Board of Trustees* (1937) 21 Cal. App.2d 171, 172 [68 P.2d 392]; *Hooper* v. *Wickes* (1928) 88 Cal.App. 535, 543 [263 P. 853]; *Alexander* v. *Manton etc. School Dist.* (1925) 73 Cal.App. 252, 258 [238 P. 742].)
▮ However, we think that under the circumstances of this case we need not be much concerned with questions of jurisdiction as between the board and the court. The decision of the trial court, which, as we have said, is sustained by substantial evidence, is based upon the proposition that when at the end of the school year marking three full years of employment by Grant and by appellant district, respondent was reemployed she became a permanent employee. The attempted dismissal or refusal to further employ was nugatory since her employment could be ended only by proceedings under the tenure law, which were admittedly not taken. As such a permanent employee she was entitled to advancement in classification and salary from Class II, step 9, to Class II, step 10, simply because the board, through the operation of its rules and procedures, did in fact determine that she was so entitled, since she had not received any reports that her work had been unsatisfactory.

▮ We turn now to the cross-appeal taken by respondent wherein she seeks reversal of that portion of the court's judgment which denied her salary increases for the years 1960-1961 and 1961-1962. She contends that even though not entitled to movement to higher steps in the salary range dur-

ing her enforced absence, she was still entitled to blanket increases given during that period to all those in her classification, and this by application of the principle of uniformity. Herein she is on sound ground. (*Aebli* v. *Board of Education, supra,* and *Fry* v. *Board of Education, supra.*) These increases were not contingent on service, experience or merit, but were increases accorded to all steps and classes in the salary schedule, including step 10 of Class II, which was the position on the schedule to which respondent had last advanced. The salary schedules received in evidence show that under this principle she would have received $7,590 for the school year 1960-1961 and $8,300 for 1961-1962, a total of $1,330 more than she was awarded in the judgment appealed from. The judgment should be changed in this respect.

For the reasons given the judgment is modified by adding thereto an additional amount in the sum of $1,330. As so modified the judgment is affirmed. Respondent and cross-appellant shall recover costs.

Schottky, Acting P. J., and Friedman, J., concurred.

The petition of the defendants and appellants for a hearing by the Supreme Court was denied December 30, 1963.