[Civ. No. 30215. First Dist., Div. One. Jan. 29, 1973.]

CALIFORNIA SCHOOL EMPLOYEES ASSOCIATION et al.,
Plaintiffs and Appellants, v.
PERSONNEL COMMISSION OF THE PAJARO VALLEY
UNIFIED SCHOOL DISTRICT OF SANTA CRUZ COUNTY et al.,
Defendants and Respondents.

**COUNSEL**

Richard H. Perry for Plaintiffs and Appellants.

Howard E. Gawthorp, County Counsel, and Gordon C. Roberts, Jr., Assistant County Counsel, for Defendants and Respondents.

**OPINION**

**KONGSGAARD, J.**\*—This is the second appeal arising out of an action in mandamus—brought by California School Employees Association and Virginia M. Keidel (hereafter "Keidel" or "petitioner") against The Personnel Commission of the Pajaro Valley Unified School District of Santa Cruz County and The Pajaro Valley Unified School District of Santa Cruz County, a state agency, (hereafter "District" or "respondent") seeking to compel them to set aside their dismissal of Virginia Keidel as a school bus driver and to reinstate her with damages for lost compensation. At

---

\*Assigned by the Chairman of the Judicial Council.

the first trial the lower court refused to order respondent to reinstate petitioner and rendered a judgment discharging the alternative writ of mandate and denied the peremptory writ. In an opinion reported at 3 Cal.3d 139 the California Supreme Court reversed the judgment with instructions to the trial court ". . . to issue its peremptory writ of mandate reinstating Mrs. Keidel, upon determining the amount of damages, if any, which she should receive for lost compensation." (*California Sch. Employees Assn.* v. *Personnel Commission* (1970) 3 Cal.3d 139, 146 [89 Cal.Rptr. 620, 474 P.2d 436].)

Pursuant to the remittitur, a second hearing was held to determine the damages, if any, to which Keidel was entitled. After this hearing the trial judge entered a judgment awarding Keidel the sum of $188.65 and requiring the reinstatement of Keidel as a bus driver upon presentation by her of a valid school bus driver's certificate. The damages awarded Keidel represented the sick leave she had accrued during the time of her dismissal. Keidel's appeal followed.

The trial court made findings and conclusions denying damages to petitioner; the trial court found inter alia:

(1) Petitioner had a duty to mitigate damages but failed to seek out employment similar in nature to that from which she had been discharged when such employment was available in nearby school districts; (2) Keidel had a duty to remain ready, willing, and able to perform her duties of employment, but had not met this obligation; and (3) even if petitioner were entitled to damages, such amounts were less than the sums allowable in mitigation.

Petitioner claims on appeal that (1) she had no duty, as a public employee, to mitigate damages or remain ready, willing, and able to resume her duties with respondent; (2) even assuming she had such duties, there was insufficient evidence to show that she failed to fulfill her duties, and (3) the evidence was insufficient to support the amounts credited in mitigation. Petitioner also claims the lower court erred in computing the amount of sick leave it credited to her. We have concluded that the lower court properly denied petitioner damages because she failed to make a reasonable effort to seek similar, available employment when such employment was available.

I

*Duty to Mitigate Damages by Seeking Similar Employment*

Under general contract principles involving private employers and

employees, a wrongfully discharged employee is entitled to damages if he was ready, willing and able at all times to fulfill his part of the contract. (*Overton* v. *Vita-Food Corp.* (1949) 94 Cal.App.2d 367, 372 [210 P.2d 757]; see also *Downs* v. *Atkinson* (1929) 207 Cal. 259, 262 [279 P. 723]; *Stone* v. *Bancroft* (1896) 112 Cal. 652, 657 [44 P. 1069]; *Payne* v. *Pathe Studios, Inc.* (1935) 6 Cal.App.2d 136, 141-142 [44 P.2d 598].) The discharged employee, however, generally has a duty to mitigate his damage by seeking other employment through the exercise of reasonable diligence. (See *Erler* v. *Five Points Motors, Inc.* (1967) 249 Cal.App.2d 560, 562 [57 Cal.Rptr. 516]; *Rosenberger* v. *Pacific Coast Ry. Co.* (1896) 111 Cal. 313, 318 [43 P. 963]; *Smetherham* v. *Laundry Workers' Union* (1941) 44 Cal.App.2d 131, 139 [111 P.2d 948].)

■ The question here is whether these general principles apply to a classified school employee who has been wrongfully discharged by a public employer. Petitioner claims that such an employee does not have an affirmative duty to mitigate damages or remain ready, willing, and able to resume work because there is a distinction between the rights and responsibilities of governmental employees, determined as they are by statute, and the rights and responsibilities of other kinds of employees, determined by contract.

It is true, as petitioner argues, that the employment rights of public employees are statutory in nature to the extent that they can be enforced by a writ of mandate in the event of an unlawful discharge. (See *Titus* v. *Lawndale School Dist.* (1958) 157 Cal.App.2d 822, 831 [322 P.2d 56].) Moreover there is authority for appellant's contention in the cases of *La Rue* v. *Board of Trustees* (1940) 40 Cal.App.2d 287 [104 P.2d 689] and *Giguiere* v. *Patterson* (1934) 138 Cal.App. 167 [31 P.2d 804]; cf. *Beseman* v. *Remy* (1958) 160 Cal.App.2d 437, 445 [325 P.2d 578]. In *La Rue* v. *Board of Trustees, supra,* after the respondent school district had wrongfully discharged certain teachers the trial court ordered the teachers reinstated and awarded damages to them. The Court of Appeal affirmed the judgment. One of the issues presented and answered in the case was: "[W]hether when, as here, a writ of mandate orders the reinstatement of a teacher, there is imposed upon such teacher the duty to seek remunerative employment during the period when the question of reinstatement is being litigated, or if employed during such period must the teacher remit any remuneration received, the same to be applied. as a deduction from the salary ordered to be paid the teacher under the terms of the mandate to be issued." (40 Cal.App.2d at p. 296.) The court said such a contention was without merit, and held that "Where, as here, the admitted

facts are that respondents were prevented by appellants from performing their contracts or rendering any services, the former were not bound to seek other employment." (See p. 296, citing *Giguiere*.)

In *Giguiere* v. *Patterson, supra,* 138 Cal.App. 167, the court upheld a judgment reinstating a teacher and awarding damages for a wrongful discharge after answering, presumably in the negative since the court could not have affirmed otherwise, the question "As a matter of law, was it not respondent's duty to seek other employment?" (At pp. 170, 173 and 174.)

Petitioner also cites *City of San Diego* v. *American Federation of State etc. Employees* (1970) 8 Cal.App.3d 308 [87 Cal.Rptr. 258], as giving new viability to the decision in *La Rue*. The issue in that case was whether public employees have the right to strike. The opinion expresses the notion that the employer-employee relationship in public employment is the product of law—constitutional, legislative and decisional—rather than of contract. (At p. 312.) While *City of San Diego* and *Titus* offer some support to the idea that a public employee is in a different position than other employees in his relationship with his employer, neither case dealt with the specific issue at hand as did *La Rue* and *Giguiere*.

These two cases must be contrasted to other authority, however, which indicates that a public employee, as any other, is bound to mitigate damages even after his wrongful discharge. In the leading case of *Mass* v. *Board of Education* (1964) 61 Cal.2d 612 [39 Cal.Rptr. 739, 394 P.2d 579], the California Supreme Court did not have the question before it specifically of whether or not a public employee had the duty to mitigate damages but rather was determining whether an employer could assert that such mitigation applies when he had failed to prove that there was outside income. (See p. 627.)

The court in *Mass* did cite *Rosenberger* v. *Pacific Coast Ry. Co., supra,* 111 Cal. 313, for the proposition that the employer has the burden of showing that the employee " 'could by diligence have obtained employment elsewhere.' " (See *Mass* v. *Board of Education, supra,* at p. 627.) Since *Rosenberger* stands for the principle that in general contract cases the employee has the duty to mitigate, *Mass* would appear to be authority that the same rule applies to public employees. Also, *Mass* cited that portion of the old case of *Hancock* v. *Board of Education* (1903) 140 Cal. 554 at page 562 [74 P. 44] which reads: " 'Under these circumstances, *in the absence of any claim by the defendant that the plaintiff could have obtained, or did obtain, other employment,* the presumption is, that he was damaged in the sum which he would have received under the contract if

he had performed the duties required.' " (*Mass* v. *Board of Education, supra,* at p. 628; italics added.)

In *Taylor* v. *Marshall* (1910) 12 Cal.App. 549 [107 P. 1012], the court refers to *Hancock* and states: "An action will lie against a board of trustees by the principal of schools, whom they have unlawfully deprived of his employment, in breach of his contract, and where it appears that he was ready and willing to perform the duties required and *could not and did not* obtain other employment, his damages will be measured by the sum he would have received under the contract." (At p. 553; italics added.)

Still another old case, *Ross* v. *Board of Education* (1912) 18 Cal.App. 222 [122 P. 967], stated in dicta: "The fact that the plaintiff was discharged without cause before the expiration of his term of employment, and has been at all times—as is admitted by the pleadings—ready, willing and able to perform his duty in compliance with his contract, undoubtedly gave him a cause of action upon and for breach of the contract; . . ." (At pp. 224-225, also citing *Hancock* v. *Board of Education, supra,* and *Stone* v. *Bancroft, supra.*)

It would appear on the basis of these cases that although *La Rue* and *Giguiere* support petitioner's contention, there is other California authority supporting the position taken by the respondent, i.e., a wrongfully discharged public employee has a duty to mitigate damages.[1] In the absence of some reason other than the simple fact that her employment rights spring from statute and not from contract, petitioner has not shown why public employees should be treated differently from other employees in the matter of mitigation of damages. Moreover we are unable to discern any policy reason for adopting a rule that would impinge a duty on wrongfully discharged private employees to mitigate damages but would not place a similar duty on their public counterparts.

The rationale for the principle of mitigating damages has been stated by Justice Sullivan in a dissenting opinion in *Parker* v. *Twentieth Century-Fox Film Corp.* (1970) 3 Cal.3d 176, 185 [89 Cal.Rptr. 737, 474 P.2d 689, 44 A.L.R.3d 615].

---

[1]The rule in other jurisdictions seems to be that discharged teachers have a duty to exercise ordinary diligence to procure other employment of a similar nature. (See Damages—Teachers Wrongful Discharge, 22 A.L.R.3d, § 5, p. 1057.) New York follows this rule: In *Adler* v. *Board of Education of City of New York* (1961) 33 Misc. 2d 789 [227 N.Y.S.2d 592, 595], affirmed 18 App.Div.2d 1053 [238 N.Y.S.2d 919], the court stated: "This court finds no express direction in the foregoing statute that relieves the plaintiffs of their common-law obligation to mitigate damages or which precludes the defendant Board of Education from a right of offset . . . ." (Citations omitted.)

"The familiar rule requiring a plaintiff in a tort or contract action to mitigate damages embodies notions of fairness and socially responsible behavior which are fundamental to our jurisprudence. Most broadly stated, it precludes the recovery of damages which, through the exercise of due diligence, could have been avoided. Thus, in essence, it is a rule requiring reasonable conduct in commercial affairs. This general principle governs the obligations of an employee after his employer has wrongfully repudiated or terminated the employment contract. Rather than permitting the employee simply to remain idle during the balance of the contract period, the law requires him to make a reasonable effort to secure other employment."

The issue has also been discussed in terms of a duty on the part of an employee to minimize his loss. Thus Judge Cordozo stated: " 'The servant is free to accept employment or reject it according to his uncensored pleasure. What is meant by the supposed duty is merely this, that if he unreasonably reject, he will not be heard to say that the loss of wages from then on shall be deemed the jural consequence of the earlier discharge. He has broken the chain of causation, and loss resulting to him thereafter is suffered through his own act.' (*McClelland* v. *Climax Hosiery Mills* (1930) 252 N.Y. 347, 359 [169 N.E. 605, 609], concurring opinion.)" (*Parker* v. *Twentieth Century-Fox Film Corp., supra,* at p. 185, fn. 1.)

The reasons for the rule apply with equal force and dignity to public employees. We perceive no reason to distinguish between private and public employees in this context and thus we hold that a wrongfully discharged public employee has a duty to mitigate damages.

## II

### *Failure to Mitigate Damages by Seeking Similar Employment*

█ The general rule is that the burden of establishing mitigation rests with the employer, and in the absence of proof of other earnings, a presumption arises that the employee has been damaged in the "sum which he would have received if he had performed the required duties in full." (*Hamilton* v. *Stockton Unified Sch. Dist.* (1966) 245 Cal.App.2d 944, 955 [54 Cal.Rptr. 463].) The measure of recovery of a wrongfully discharged employee is the amount of salary he would have received plus other benefits such as retirement, accumulated vacation and sick time, pay increases and interest on pay increases from date of accrual to judgment, *less the amount which the employer affirmatively proves the employee has earned or with reasonable diligence might have earned from other*

employment. (See *Parker* v. *Twentieth Century-Fox Film Corp., supra,* 3 Cal.3d 176, 181; *Mass* v. *Board of Education, supra,* 61 Cal.2d 612, 624-626, 627; *Kast* v. *Board of Trustees* (1963) 222 Cal.App.2d 8, 19-20 [34 Cal.Rptr. 710].)

"However, before projected earnings from other employment opportunities not sought or accepted by the discharged employee can be applied in mitigation, the employer must show that the other employment was *comparable, or substantially similar,* to that of which the employee has been deprived; the employee's rejection of or failure to seek other available employment of a different or inferior kind may not be resorted to in order to mitigate damages. (*Gonzales* v. *Internat. Assn. of Machinists* (1963) 213 Cal.App.2d 817, 822-824 [29 Cal.Rptr. 190]; *Harris* v. *Nat. Union etc. Cooks, Stewards* (1953) 116 Cal.App.2d 759, 761 [254 P.2d 673]; *Crillo* v. *Curtola* (1949) 91 Cal.App.2d 263, 275 [204 P.2d 941]; *de la Falaise* v. *Gaumont-British Picture Corp., supra,* 39 Cal.App.2d 461, 469 [103 P.2d 447]; *Schiller* v. *Keuffel & Esser Co.* (1963) 21 Wis.2d 545 [124 N.W.2d 646, 651]; 28 A.L.R. 736, 749; 22 Am.Jur.2d, Damages, §§ 71-72, p. 106.)" (*Parker* v. *Twentieth Century-Fox Film Corp., supra,* at p. 182; italics added.)

█ The trial court found that numerous jobs for school bus drivers were available in the locality from 1967 to the time of trial; that such jobs were similar to the job held by petitioner with respondent district and that petitioner made no effort whatsoever to obtain similar employment since her dismissal.

Petitioner contends the evidence is insufficient to support the trial court's finding of similarity between the positions available and the position from which she was discharged. Petitioner argues the available positions were inferior as a matter of law so that she had no duty to seek them out in order to mitigate damages. (See *Gonzales* v. *Internat. Assn. of Machinists* (1963) 213 Cal.App.2d 817, 822-824 [29 Cal.Rptr. 190].) Respondents introduced evidence to show that three other school districts in the immediate area had employed bus drivers between the time appellant was improperly discharged until the date of trial. We set forth in some detail the significant benefits the employees in such nearby districts were entitled to receive.

Jack Cauwels, the business manager for the Santa Cruz City Schools, testified that his district hired 24 bus drivers between March of 1967 through 1970. The Santa Cruz district paid its bus drivers according to a five-step schedule and a monthly rather than an hourly basis, and new

drivers were usually employed at the lowest step. The parties have converted these monthly figures into hourly figures on the basis of a work year of 2,088 hours and these figures (they agree on the minimum) are given below:

1967-68 school year..........$385 to $469 per mo.
(or $2.21 to $2.70 per hr.)

1968-69 school year..........$417 to $507 per mo.
(or $2.30 to $2.70 per hr.)

1969-70 school year..........$453 to $552 per mo.
(or $2.60 to $2.87 per hr.)

1970-71 school year..........$469 to $569 per mo.
(or $2.68 to $3.27 per hr.)

The monthly salaries referred to were for eight hours a day and twelve months a year since the bus drivers were employed for a full eight hours up to the 1970-1971 school year even if their runs took less time than that. In the 1970-1971 school year some of the drivers were employed for less than eight hours a day.

Vacation benefits accrued at the rate of 5/6th of one day per each month of full time employment (or 10 days for 12 months of work). Sick leave was accrued on the basis of one day per month or a prorated amount for part-time employees. An employee working seven hours a day would earn seven hours of sick leave per month.

The Santa Cruz schools appointed their drivers pursuant to an eligibility list which was established as the result of a competitive examination. The examinations were given at different times, depending on the number of applicants. Selections for bus drivers were then made from an eligibility list consisting of the top three people from the examinations.

A Mrs. Vandever testified from her position as accountant for the North Monterey County Union School District as to the hiring conditions in that district. She stated that between March 1967 and the time of trial there had been openings for 21 bus drivers. From July 1966 until the fall of 1968 the drivers were paid a flat rate of $2.63 per hour. After December of 1968 a salary schedule with different steps was employed with salaries ranging from $2.42 to $2.91 an hour. As of July 1, 1970, the range was raised to $2.69 to $3.05 per hour. Vacation time accrued at the rate of one day per month or a prorated amount for part-time employment. For example, an employee would get 45 hours' vacation time for four and one-half hours of work a day for 10 months. Sick time accrued at the rate

of one day per month. The North Monterey County Union School District is not a merit system school district.

There was also testimony concerning employment practices of the Monterey Peninsula Unified School District. According to a witness, 34 drivers had been hired by the district between March of 1967 and the time of trial. This district compensated all bus drivers on an hourly rate. The starting pay rates for the years in question were as follows:

1967-68 school year.......................$2.32 per hour
1968-69 school year...................... 2.46 per hour
1969-70 school year...................... 2.62 per hour
1970-71 school year ..................... 2.66 per hour

The majority of bus drivers working for the district did not work eight hour shifts, although the minimum day was five hours. During their initial year of service, employees of the Monterey Peninsula Unified District earned two weeks paid vacation and three weeks thereafter until the 15th year when four weeks annually was allowed. In addition, sick leave was granted on the basis of one day a month, or a total of 12 days a year for 12-month employees. The Monterey Peninsula District was not a merit system school district.

With regard to petitioner's position of employment with respondent District, the evidence indicated that Keidel was first employed on April 1, 1964, by the Watsonville Joint Union High School District, a component of respondent. She was placed in the classified position of bus driver and worked five days per week for ten months at an hourly rate for the days that the schools were in session. Keidel worked 1,242 regular hours during the 1964-1965 school year; 1,240 hours during 1965-1966; and 899.5 hours during 1966-1967. She was dismissed for cause on March 21, 1967.

The evidence showed that with due allowances for longevity and seniority credits, appellant's hourly salary rate with respondent District for each school year involved would have been:

Balance of 1966-67 school year ..............$2.45 per hour
1967-68 school year ............... 2.51 per hour
1968-69 school year.............. 2.77 per hour
1969-70 school year.............. 3.08 per hour
1970-71 school year.............. 3.33 per hour

In addition to salary, paid vacation time was based on years of service

and total hours worked in a given year, and in the 1967-1968 school year appellant's paid vacation time would have been based on the number of hours worked divided by the total number of hours per year (2,088) times a factor of .96, which factor increased yearly thereafter to .104 in 1968-1969; .112 in 1969-1970; and .120 in 1970-1971.

Sick leave was based on respondent's rule 4241 providing that "Part-time classified employees employed for the entire school year shall be entitled to that proportion of (12) days leave of absence for illness or injury with pay as the number of hours he is employed per week bears to 40." Based on that formula, which appellant challenges and which will be dealt with hereafter, a 10-month employee working 30 hours a week would be granted only 7.5 days sick leave per year.

In our view a comparison of the positions available in the nearby districts with the position from which the petitioner was discharged supports the trial court's finding that there were similar positions of employment available to the petitioner. At the outset we note the evidence demonstrated the available employment was not of a different kind but was the same specific type of employment, viz., driving a school bus. Moreover, the alternative employment was in the same locale where petitioner resided, thus eliminating any necessity for her to move to accept such employment. We also note there is little variation between vacation and sick time available in any of the districts.

Petitioner argues and we observe that there were some differences in the salary schedule of respondent and the other school districts. In addition two of the three districts had no merit system for classified employees. Petitioner urges that the slightly lower salary schedule in the other three districts and the lack of a merit system result in the alternative positions being inferior as a matter of law. It is the law that a wrongfully discharged employee has no duty to seek or accept different or inferior employment to mitigate damages. (*Parker* v. *Twentieth Century-Fox Film Corp., supra,* 3 Cal.3d 176, 182; *Gonzales* v. *Internat. Assn. of Machinists, supra,* 213 Cal.App.2d 817, 822; *Harris* v. *Nat. Union etc. Cooks, Stewards, supra,* 116 Cal.App.2d 759, 764.)

There is some authority for the proposition that whether or not the other employment is comparable or substantially similar or equivalent to the prior position is a question of fact. (See 22 Am.Jur.2d, Damages, § 71, pp. 106-107; see also *Parker* v. *Twentieth Century-Fox Film Corp., supra,* 3 Cal.3d 176, 184 where the court implies that triable issues of fact concerning the inferiority of the other employment might, in the right case,

exist.) On the other hand the issue of substantial similarity or inferiority of employment is one that has often been decided as a matter of law in California. (See *Parker* v. *Twentieth Century-Fox Film Corp., supra,* at p. 184; *Gonzales* v. *Internat. Assn. of Machinists, supra,* 213 Cal.App.2d 817; *Harris* v. *Nat. Union etc. Cooks, Stewards, supra,* 116 Cal.App.2d 759; *de la Falaise* v. *Gaumont-British P. Corp., supra,* 39 Cal.App.2d 461.) In *de la Falaise* v. *Gaumont-British P. Corp., supra,* the court stated that since there was no conflict in the record concerning the evidence, it must determine as a matter of law whether the evidence is sufficient to support the verdict. (See pp. 466, 469.) It then determined as a matter of law that certain other employment, although different in character, was not in fact "inferior." (See p. 470.)

The lower court in the present case reviewed the evidence presented concerning other types of employment available and concluded on the basis of such evidence that the other employment was of a substantially similar nature. Our comparison of the similarities and differences in the other employment and petitioner's job leads us to the same conclusion. There will perforce be some differences between any two jobs. However, as Sullivan, J. pointed out in his dissenting opinion in *Parker* v. *Twentieth Century-Fox Film Corp., supra,* 3 Cal.3d 176, 186, "It has never been the law that the mere existence of *differences between two jobs in the same field* is sufficient, as a matter of law, to excuse an employee wrongfully discharged from one from accepting the other in order to mitigate damages." Even assuming that *Parker* opened the way for such differences to afford a basis for determining as a matter of law that the other employment is inferior, we cannot reach such a conclusion in this case. The other employment was of the same nature and with a few minor exceptions, the pay and benefits were substantially similar.

Petitioner claims that the pay differential is sufficient under *Gonzales* v. *Internat. Assn. of Machinists, supra,* 213 Cal.App.2d 817 to make the other employment "inferior" as a matter of law. Although the *Gonzales* court referred to evidence which showed the pay to be inferior (see p. 822), the opinion does not indicate what the respective pay scales had been. Thus, we do not know whether the differences were a matter of pennies per hour, as in this case, or dollars per hour. We are impelled to conclude that the minor differences in pay which existed in this case were not sufficient in the absence of other substantial differences to make the other employment inferior as a matter of law. The lower court did not err in finding the other employment to be substantially similar in nature.

This holding is reinforced by the finding of the trial court that petitioner made no effort whatsoever to seek other available bus driving employment since her discharge. The testimony that 79 school bus drivers were hired in the three nearby districts after petitioner's discharge and her admission that she made no effort to obtain similar employment amply support such a finding.

As an additional basis for the denial of damages to the petitioner the trial court found that the respondent was entitled to offset from any amount due to petitioner any sums actually earned by petitioner from employment which was inconsistent with petitioner's school employment as well as amounts received by her for temporary disability indemnity. The trial court found these sums exceeded any moneys petitioner would have received from respondent had she not been wrongfully discharged.

█ Petitioner contends these findings are not supported by the evidence. The general rule is that the obligation to reimburse a wrongfully discharged employee may be mitigated by deducting earnings actually received from other employment. (*Mass* v. *Board of Education, supra,* 61 Cal.2d 612, 627.) This general rule is modified, however, by the principle that only those earnings which are inconsistent with the original employment may be considered in mitigation, for example, earnings from night or weekend work which would not have been inconsistent with school employment, are not to be deducted. (*Beseman* v. *Remy, supra,* 160 Cal.App.2d 437, 445.) Our review of the record indicates that the trial court may have erred in allowing some credits to the respondent for commissions earned by petitioner for real estate and insurance sales. █ However, such error is harmless in view of our holding that comparable employment of a substantially similar nature was available to petitioner; that petitioner made no effort to seek such employment; and that the projected earnings from such employment possibilities could be applied by the employer in mitigation.

### III

█ Petitioner also contends the lower court erred in crediting her with only 7.5 days per year of sick leave pursuant to the District's sick leave rule 4241. The lower court found that petitioner was a part-time classified employee who was employed five days per week, six hours per day, for ten months a year and computed her sick leave under rule 4241 at seventy-seven hours.

Petitioner claims that since she worked five days a week, she is entitled to ten days' sick leave per year under those provisions of Education Code section 13651.1 stating that: "Every classified employee employed five days

a week by a school district shall be entitled to 12 days of absence for illness . . . . A classified employee, employed five days a week, who is employed for less than a full fiscal year is entitled to that proportion of 12 days leave of absence for illness or injury as the number of months he is employed bears to 12 . . . ."

Respondent credited appellant with 7.5 sick days leave a year under its rule 4241 which in turn is based upon Education Code section 13593 which reads, in part: "Regularly employed part-time classified employees shall be entitled to sick leave . . . ; but such leaves . . . may be prorated in the same ratio as the regular work hours per day, . . ."

A parttime employee is defined in Education Code section 13712 as "one for which the assigned time, when computed on an hourly, daily, weekly, or monthly basis, is less than 87½ percent of the normally assigned time of the majority of employees in the classified service." Since the majority of respondent's employees worked eight hours per day, petitioner's average time of six hours per day would be 75 percent, or less than the 87½ percent normally assigned to respondent's employees.

Even assuming that section 13651.1 could be possibly interpreted to mean that all persons employed five days a week are entitled to the maximum amount of sick leave, such an interpretation would be unreasonable. The general rule is that when statutory language is susceptible of two constructions, one which would produce absurd consequences and the other a reasonable and fair result, the latter construction should be adopted. (*Cryor* v. *State Personnel Bd.* (1967) 253 Cal.App.2d 100, 104 [61 Cal. Rptr. 243]; see also *City of Escondido* v. *Municipal Court* (1967) 253 Cal.App.2d 801, 805 [61 Cal.Rptr. 362].) To interpret section 13651.1 as petitioner requests would lead to the absurd result that any person working five days a week, be it for a minute a day or eight hours, would be entitled to one sick day per month. Moreover, when sections 13651.1 and 13593 are read together, it appears that the obvious intent of section 13593 is to define various rights of part-time employees whereas section 13651.1 defines the sick leave rights of full-time employees. Thus, the lower court properly applied respondent's rule 4241 in determining the credits for sick leave.

The judgment is affirmed.

Molinari, P. J., and Elkington, J., concurred.

A petition for a rehearing was denied February 28, 1973, and appellants' petition for a hearing by the Supreme Court was denied April 4, 1973.